# EXHIBIT 1

To the Verified Complaint dated September 2, 2022

LEERINK

December 9, 2014

Michael Drendel
2929 Hampton Ave
Charlotte, NC 28207

Dear Michael,

I am delighted to extend to you a written offer for the position of Managing Director in our Investment Banking Department of Leerink Partners LLC ("Leerink," "we" or "Company"). This position reports to the Senior Managing Director, Head of Investment Banking. We anticipate that you will find your employment with us enjoyable and professionally rewarding and we look forward to you joining our team.

Your date of employment is considered to be the first date you are officially on our payroll which is currently expected to be March 11, 2015, or such earlier date on which you notify us that your previous employer has waived any requirement to provide it advanced written notice of your resignation or we conclude that you are not bound by any such requirement. An outline of your compensation is as follows:

Compensation.

We are prepared to offer you a base pay of $10,416.67 semi-monthly, or an annualized rate of $250,000.00, less applicable withholdings and deductions.

Sign-on Bonus

You will receive a guaranteed bonus in the amount of $6,308,000.00 less applicable withholdings and deductions payable as follows:

i) $4,000,000 of this bonus will be paid in cash, less applicable withholdings and deductions, on the first payroll date after your official start date. This bonus will not be subject to the Company's Deferred Compensation Plan.
ii) $2,308,000 of this bonus will be paid on the latter of (i) the first regular payroll date after your official start date or (ii) the date on which the Company's bonuses for 2014 are paid. This bonus will be subject to the Company's Deferred Compensation Plan.

In order to receive the sign-on bonus outlined above, you must either (a) be an active, full-time employee in good standing at the time this payment is made, or (b) have had your employment terminated by the Company without Cause (as defined below) prior to such payment. In the event that the payments are received pursuant to clause (b) above, they shall continue to be made in accordance with the schedule outlined above and shall be in lieu of severance or any other claims you might have against the Company as a result of such termination. The Company's obligation to make payments pursuant to clause (b) above shall be conditioned on the parties signing a mutual general release reasonably satisfactory to the parties (which release shall not include any new post-employment restrictions or obligations on you, beyond your release of any and all claims against the Company). Any sign-on bonuses paid by Leerink must be repaid to the Company within thirty (30) days if you (i) voluntarily terminate your employment within twelve



MD 12/10/14

(12) months of your start date or (ii) fail to start your employment when no longer legally or contractually prohibited from doing so.

All employees are presented with Business Goals, mutually agreed upon goals/objectives, which outline their role and responsibility with the Company. Your Business Goals will be established and discussed with your Manager shortly after your date of hire.

Special Deferred Grant.

You have advised us that as of your date of employment with us you will have forfeited certain unvested deferred compensation awards totaling approximately $1,331,131 as a result of your separation from Lazard and subsequent employment by the Company. Provided you comply with the documentation obligations set forth below, the Company will grant you special deferred compensation awards in the form of: 1) deferred cash and 2) equity. These awards will reflect the value of the forfeited deferred compensation awards from Lazard as outlined below.

i) $831,131 which will be granted in the form of a deferred cash award that will be paid in accordance with the payment schedule attached hereto as Exhibit A, subject to the condition that you must be an active, full-time employee in good standing at the time these payments are made and reduced by all applicable withholdings and deductions at the time the payments are due.

ii) $500,000 will be granted in the form of non-voting C Units of Leerink Holdings, LLC ("Holdings"), the parent of Leerink Partners LLC, ("C Units") priced at the then current fair market value as last determined by the Board of Managers of Holdings immediately prior to the date your employment commences. This grant will be issued shortly after your date of hire, and will vest based on the schedule attached hereto as Exhibit A. Granted C Units are subject to certain restrictions and agreements, including those contained in the Holding's Limited Liability Company Agreement, and shareholder agreements and unit award agreements to which you will become a party and are subject to your review.

It is your obligation to provide Leerink with documentation reasonably deemed necessary by Leerink to verify and evaluate deferred compensation amounts and to structure the off cycle bonus payments and the equity award. Any special deferred cash payments made by Leerink, must be repaid to the Company within thirty (30) days if you (i) voluntarily terminate your employment within twelve (12) months of your start date or (ii) fail to start your employment when no longer legally or contractually prohibited from doing so.

Offsetting Payments

Any amounts received by you from your current employer other than salary will reduce the amounts owed by the Company with respect to the Sign-on Bonus and the Special Deferred Grant. The parties will negotiate in good faith to allocate any such amounts received from your current employer to the Sign-on Bonus or Special Deferred Grant as appropriate. By way of illustration, if you receive a discretionary or performance bonus, it will reduce the Sign-on Bonus; if you receive an amount in respect of deferred compensation or shares that were expected to be forfeited, it will reduce the Special Deferred Grant.

2015 Guaranteed Minimum Bonus

In respect of 2015, we will pay you a guaranteed minimum bonus of $1,750,000 (the "2015 Guaranteed Minimum Bonus") less applicable withholdings and deductions, subject to the Company's deferred

MD
12/10/14

compensation plan. This bonus will be paid in accordance with the Company's normal bonus cycle for 2015.

In order to receive the 2015 Guaranteed Minimum Bonus, you must either (a) be an active, full-time employee in good standing at the time this payment is made, or (b) have had your employment terminated by the Company without Cause (as defined below) prior to such payment. In the event that the payments are received pursuant to clause (b) above, they shall continue to be made in accordance with the schedule outlined above and shall be in lieu of severance or any other claims you might have against the Company as a result of such termination. The Company's obligation to make payments pursuant to clause (b) above shall be conditioned on the parties signing a mutual general release reasonably satisfactory to the parties (which release shall not include any new post-employment restrictions or obligations on you, beyond your release of any and all claims against the Company).

2015 and 2016 Bonus

For each of the calendar years 2015 and 2016, you will receive an incentive bonus equal to a percentage of IB Transaction Revenue (as defined below) recognized by the Company during that calendar year from transactions that you originated and led the execution as specified below, reduced by (i) your annual salary, (ii) $250,000 per transaction (iii) your Pro Rata Share of any Excess Expense (as defined below) and, (iv) in 2015, the 2015 Guaranteed Minimum bonus paid to you. The percentage of IB Transaction Revenue available for this bonus will vary depending on the type of transaction and the role played by the Company as follows: (1) for revenue from assignments relating to mergers, acquisitions, private equity recapitalizations and restructurings – 50%; (2) for revenue from private placements and capital markets transactions where the Company is a bookrunner – 40%; and (3) for revenue from other capital markets transactions – 20%. If a transaction involves a company with which Leerink had a pre-existing relationship or included significant involvement from other members of the Company's banking team, the Company may allocate a reduced percentage of the revenue from that transaction to this bonus, which will be decided jointly with Mr. Drendel and the Head of Investment Banking. IB Transaction Revenue recognized by the Company shall be determined in accordance with the Company's GAAP financial statements. Incentive bonuses will be paid according to the Company's regular bonus cycle and will be subject to the Company's deferred compensation plan. In order to receive the bonuses outlined above, you must be an active, full-time employee in good standing at the time the payment is scheduled to be made.

Definitions.

For purposes of this Agreement, "*Cause*" means: (1) conviction of (or pleading *nolo contendere* to) theft, fraud, deceit, embezzlement or willful misappropriation of funds or property of the Company (or any of its affiliates or subsidiaries); (2) any material dishonesty, moral turpitude, intentional wrongful act or omission, or willful misconduct relating to the Company (or any of its affiliates or subsidiaries), or shareholders, or in any of their businesses that, in the case of any such wrongful conduct or omissions, you know or should know will have a material adverse effect on the Company or any of its affiliates or subsidiaries or their businesses, (3) conviction of (or pleading *nolo contendere* to) a felony that reasonably could be deemed to affect your fitness for your position or is likely to adversely affect the Company's (or any of its affiliates' or subsidiaries') reputation or business, (4) becoming permanently enjoined by the Securities and Exchange Commission, the Financial Industry Regulatory Authority, Inc. or any other governmental, self-regulatory organization, or industry regulatory authority from working in the investment advisory, securities, broker-dealer, or distribution industry or other industry in which the Company (or any of its affiliates or subsidiaries) engages, after any and all appeal periods have expired; (5) gross negligence or continuous nonfeasance with regard to your duties, after written notice from the Company specifying in detail the nature of the gross negligence or nonfeasance and a reasonable

opportunity (and, in any event, at least 30 days) to cure; (6) any willful and substantial violation by you of any material term of this Agreement or another duly executed agreement with the Company (or any of its affiliates or subsidiaries), which you knew or should have known was likely to have a material adverse effect on the Company or any of its affiliates or subsidiaries or their businesses, after written notice from the Company specifying in detail the nature of the violation and, if such violation is amenable to cure, a reasonable opportunity (and, in any event, at least 30 days) to cure; or (7) willful and substantial violation by you of the code of ethics, compliance manual or written policies of the Company (or any of its affiliates or subsidiaries) of which you are aware, which violation is determined, in good faith, by the Board of Managers of Holdings, (or any committee of that Board to whom such responsibility has been delegated) to be likely to be materially harmful to the Company, its affiliates or subsidiaries, or their respective businesses.

"*IB Transaction Revenue*" shall mean (i) 70% of gross revenue recognized by the Company from capital markets transactions (including all underwritten public securities offerings and similar transactions) less unreimbursed out-of-pocket expenses associated with such transactions or (ii) 100% of investment banking advisory revenues recognized by the Company (including all assignments relating to mergers, acquisitions, private equity recapitalizations, restructurings, opinions, and private placements), less unreimbursed out-of-pocket expenses associated with such transactions.

"*Excess Expense* " shall mean the amount by which the operating expense of the Charlotte office, including rent and other office expenses, and compensation expenses for Charlotte employees (other than Managing Directors as of March 15, 2015) exceeds $3,500,000 per year. Your "*Pro Rata Share*" of any Excess Expense equals 50% of the total Excess Expense.

Benefits.

This offer of employment also includes access to a comprehensive and flexible benefits program offered by our Company and is available to you on your date of hire. A summary of these provisions is as follows:

- Health, Dental and Vision coverage is available to both you and your qualified dependents immediately upon your date of hire.
- We also offer Flexible Spending Plans and a Health Savings Account for healthcare expenses that allow employees to set aside tax-free dollars to pay for qualified expenses.
- On your date of hire, you are eligible to enroll in the following company paid insurance policies: Life, Dependent Life, Short and Long Term Disability, Travel and Accident and AD&D coverage.
- The Company also offers its employees the opportunity to invest in its 401(K) Retirement Plan. It is a 401(K) voluntary contribution plan administered by Great West Retirement Services. You are eligible to participate in the Plan beginning on the first day of the month following the completion of two full months of service. You may contribute 1% to 15% of your salary, up to a maximum of $18,000.00 in 2014. Employees will automatically be enrolled with a 3% 401(k) contribution the 1st of the month following 60 days of employment, unless you manually opt out.
- Paid time off including up to 20 days paid vacation, 2 personal days in 2014 (2 thereafter), company holidays, and 5 paid sick days.

***Note: This is not a complete summary of insurance coverage. You will receive complete information on your date of hire. Plan documents are controlling. The Company reserves the right to alter or eliminate its benefit plans at its sole discretion.***

Licensing and Performance.

12/10/14
MD

Please note that your continued employment will be contingent upon your maintaining all necessary licenses and registrations, including the Series 79 or 7, and Series 63.

Notice of Retirement/Resignation.

You shall not voluntarily retire, resign or otherwise terminate your employment relationship with the Company or any of its affiliates without first giving the Company at least ninety (90) days prior written notice of the effective day of your retirement, resignation or other termination. Such written notice shall be sent by certified mail to Leerink Partners LLC, Attn: Human Resources Department, 1 Federal Street, Boston MA 02110. The Company retains the right to waive the notice requirement in whole or in part or to place you on paid leave for all or part of this ninety (90) day period. In the alternative, at any time after you give notice, the Company may, but shall not be obligated to provide you with work and (i) require you to comply with such conditions as it may specify in relation to transitioning your duties and responsibilities; (ii) assign you other duties; or (iii) withdraw any powers vested in, or duties assigned to you.

Non-Solicitation.

You agree that, if your employment is terminated for any reason, you shall not, (1) for a period of ninety (90) days after such termination, without the Company's prior written consent, directly or indirectly solicit the trade or patronage of any of the Company's clients or customers with whom the Company worked during the term of your employment and with whom you had significant contact as an employee of the Company, or (2) for a period of one year after such termination, without the Company's prior written consent, directly or indirectly: (a) solicit or induce, approach, attempt or cause or induce, or encourage others to solicit or induce, any employees of the Company to leave the Company; (b) hire or cause others to hire any employees of the Company; (c) encourage or assist in the hiring process of any employees of the Company, or cause others to participate, encourage or assist in the hiring process of any employees of the Company.

Non-Disclosure of Confidential Information.

You shall not at any time, whether during your employment or following the termination of your employment, for any reason whatsoever, directly or indirectly disclose or furnish to any entity, firm, corporation or person, except as otherwise required by law, any confidential or proprietary information of the Company with respect to any aspect of its operations, business or clients. "Confidential or proprietary information" shall mean information generally not known to the public to which you gain access by reason of your employment by the Company and includes, but is not limited to, information relating to all present or potential customers, business and marketing plans, sales, trading and financial data and strategies, salaries and employment benefits, and operational costs. This provision shall survive the expiration of this Agreement.

Company Property.

All records, files, memoranda, reports, customer information, client lists, documents and equipment relating to the business of the Company, whether in electronic or any other format, which you prepare, possess or come into contact with while you are an employee of the Company, shall remain the sole property of the Company. You agree that upon the termination of your employment, you shall provide to the Company all documents, papers, files, electronic media, or other material in your possession and under your control that are connected with or derived from your services to the Company. You agree that the Company owns all work products, patents, copyrights and other material produced by you during your employment with the Company. This provision shall survive the expiration of this Agreement. 12/10/14 MD

LEERINK

Remedies.

In the event you breach your obligations under this Agreement, the Company, in addition to being entitled to exercise all rights granted by law, including recovery of damages, will be entitled to specific performance of its rights under this Agreement. You acknowledge that the Company shall suffer irreparable harm in the event of a breach or prospective breach of the preceding four paragraphs hereof and that monetary damages would not be adequate relief. Accordingly, the Company shall be entitled to seek injunctive relief in any federal or state court of competent jurisdiction located in, the Borough of Manhattan, New York City, New York, or in any state in which you reside. You further agree that the Company and its affiliates shall be entitled to recover all costs and expenses (including attorneys' fees) incurred in connection with the enforcement of the Company's rights hereunder. In the event of termination of your employment, the Company may offset, to the fullest extent permitted by law, any amounts due to the Company from you, the reasonable value of any Company property you improperly retain, or monies advanced or loaned to you by the Company, from any monies owed to you or your estate by reason of your termination.

Arbitration.

Subject to the preceding paragraph, any and all disputes arising out of or relating to your employment or the termination of your employment with the Company, including any statutory claims based on alleged discrimination or harassment, including without limitation sexual harassment, will be submitted to and resolved exclusively by a panel of arbitrators from the Financial Industry Regulatory Authority, Inc. ("FINRA") in accordance with the Code of Arbitration Procedure For Industry Disputes ("Code"), which may be found at the FINRA Website: www.finra.org. The arbitration shall be held in, the Borough of Manhattan, New York City, New York. In agreeing to arbitrate your claims, you recognize that you are waiving your right to a trial in court and by a jury. The arbitration award shall be binding upon both parties, and judgment upon the award may be entered in a court of competent jurisdiction. A dispute arising under a whistleblower statute that prohibits the use of predispute arbitration agreements is not required to be arbitrated unless the parties have agreed to arbitrate it after the dispute arose. You and the Company may seek temporary injunctive orders and/or permanent injunctive relief in accordance with the Code.

Miscellaneous.

During the course of your employment with the Company, it may, at its sole discretion, change your duties, accounts, and responsibilities and to whom you report in order to meet the needs of its business.

On your first day of employment, you will receive the Leerink Partners Employee Handbook. The documentation included in that Handbook is designed to outline the Company's general guidelines and practices. In accepting employment with the Company, you agree to abide by the guidelines set forth in the Handbook.

Due to regulatory requirements, Company employees are required to maintain their brokerage accounts with the Company or with another broker with which the Company has an arrangement to receive automatic feeds of account information. A list of such brokers is available from the Company's Compliance Department. Upon acceptance of this offer and verification of references, resume, and any other background checks that the Company deems appropriate, on your first day of employment, you will be asked to transfer all outside accounts, with the exception of managed accounts, into the Company. Furthermore, the Company periodically submits employee names to CDC/Equifax, service providers to the securities industry, to ensure that all outside brokerage accounts are properly reported. By signing below you acknowledge your agreement to this policy.

12/10/14
MD



Case 3:22-cv-00457-RJC-DCK Document 1-1 Filed 09/02/22 Page 7 of 11

As a condition of your continued employment, from time to time, in order to protect the business interests of the Company, you may be required to sign other agreements regarding confidentiality or containing restrictive covenants that are either (i) consistent, in all material respects, with the confidentiality provisions and restrictive covenants contained in this letter or (ii) do not affect the bonuses and grants described above in this letter and are generally applicable to all employees of similar title and position.

You warrant and represent that, except as attached hereto as Exhibit B, you are not aware (after reasonable investigation) of any employment contract, restrictive covenant or other restriction preventing you from entering into employment with or limiting your ability to conduct the activities contemplated by this agreement or to carry out your responsibilities to the Company, or which is in any other way inconsistent with the terms of this letter (and as to Exhibit B, you are uncertain if its provisions apply to you, but have reason to believe that your former employer will assert that they so apply) and you are and will continue to be in compliance with any restrictions on solicitation or use or possession of confidential information which apply to you. The Company will defend, indemnify you and hold you harmless against any damages, judgments, or expenses (including attorney's fees) incurred in connection with any actual or threatened suits, arbitration, proceedings, investigations or other claims, or your defense of the same, arising from or in connection with the termination of your employment with your existing employer and your joining the Company. Such indemnification shall not apply to any claim, loss, or expense which is found, in a final judicial determination, to be caused by your gross negligence or willful misconduct or breach of the representation contained in the first sentence of this paragraph. Notwithstanding any provision in this letter, if you are enjoined from accepting our offer of employment or advised by legal counsel to delay your official start date as a result of the contracts, covenants or restrictions disclosed on Exhibit B, (i) you will for all purposes with respect to the bonus described in clause (i) of the section captioned "Sign-on Bonus" and the first payment of the grant described in clause (i) of the section captioned "Special Deferred Grant" as set forth in Exhibit A, be deemed an active, full-time employee in good standing as of the date your employment with Lazard is terminated until such time as the injunction or delay expires and (ii) this letter shall otherwise remain in full force and effect.

If an action shall be brought against you, you shall notify the Company thereof, but your failure to do so shall not relieve the Company from any obligation hereunder. The Company shall be entitled to assume the defense of such action at its expense with counsel chosen by the Company and reasonably satisfactory to you; *provided, however*, that you may at your own expense retain separate counsel to participate in such defense; and *provided further*, that you may employ separate counsel at the Company's expense and control your own defense of such action if, in the reasonable opinion of your counsel, conflict or potential conflict exists between the Company and you that make such separate representation advisable. In no event shall the Company be required to pay fees and expenses under this indemnity for more than one firm of attorneys for you in any one jurisdiction in any one legal action or group of related legal actions. In any case, you and the Company shall cooperate and assist each other in such defense, and shall make available to the other all records, documents, employees and information (written or otherwise) relevant to such defense. The Company further agrees that it will not, without your prior written consent (which will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not you are a party therein) unless the foregoing includes an unconditional release of you from all liability arising therefrom, and Company will not be liable hereunder for any settlement thereof by you without the Company's prior written consent (which will not be unreasonably withheld).

The Company complies with the Immigration Reform and Control Act, and accordingly, we request that you bring appropriate verification of authorization to work in the United States (e.g., U.S. Passport, INS issued Alien Registration Card, or original birth certificate and social security card with a driver's license) with you **on your first day** of employment.

12/10/14
MD

LEERINK

The Company maintains a pay and benefits program that enables us to attract, retain, reward and engage the enthusiasm of the highest caliber employees needed to accomplish our business objectives. Again, we are enthusiastic about the prospect of your joining the Company and believe the relationship will be mutually rewarding.

Please note that employment is offered on an at-will basis. Nothing in this letter or any discussions with you may be construed in any manner as an agreement to employ you for any fixed term.

This Agreement will be construed and interpreted in accordance with the laws of the State of New York, without regard to choice of law principles. This Agreement contains the entire understanding of the parties with respect to the matters addressed in it, and supersedes any prior agreements or understanding with respect thereto.

Your employment is subject to the verification of any background checks that the Company deems appropriate. We trust that you will treat the details of this offer with the utmost confidentiality.

Please feel free to contact me if you have any questions. We are looking forward to having you join our team.

Sincerely,

James Boylan
Senior Managing Director
Head of Investment Banking

12/10/14
MD

LEERINK

I hereby accept Leerink Partners LLC's offer of employment on the terms described above. Please return the entire offer letter **with this signed page** by mail or by fax to 617-918-4722 to Maura Polak, Managing Director, of Human Resources.

[signature] 12/10/14

**NAME** **Michael Drendel** **DATE**

**Anticipated Start Date:** March 11, 2015 - (please confirm)

12/10/14
MD



Case 3:22-cv-00457-RJC-DCK Document 1-1 Filed 09/02/22 Page 10 of 11

LEERINK

Exhibit A

**Special Deferred Grant Award Payment Schedule**

Payments will be made within 30 days of the vesting date.

| | Vesting Date | | | |
|---|---|---|---|---|
| **Payment or vesting date** | **3/15/2015** | **2016** | **2017** | **Total Award Value** |
| **Deferred cash** | $812,247 | $12,120 | $6,764 | $831,131 |
| **Restricted Shares** | $0 | $320,905 | $179,095 | $500,000 |
| **Total** | $812,247 | $333,025 | $185,859 | $1,331,131 |

MD
12/10/14