IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: 3:22-cv-00457

SVB FINANCIAL GROUP and SVB SECURITIES HOLDINGS LLC,

*Plaintiffs*,

v.

MICHAEL DRENDEL,

*Defendant.*

# DEFENDANT MICHAEL DRENDEL'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS SVB FINANCIAL GROUP AND SVB SECURITIES HOLDINGS LLC'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

MAYNARD, COOPER & GALE, P.C.

Joshua B. Baker (NC Bar No. 43390)
Peter S. Fruin (admitted *pro hac vice*)
1901 Sixth Avenue North
Suite 1700
Birmingham, Alabama 35203
T: (205) 254-1000
jbaker@maynardcooper.com
pfruin@maynardcooper.com

Margaret M. Siller (admitted *pro hac vice*)
1201 Villa Place
Suite 200
Nashville, Tennessee 37212-3030
T: (629) 258-2253
msiller@maynardcooper.com

**TABLE OF CONTENTS**


PRELIMINARY STATEMENT 1

STATEMENT OF FACTS 2

I. DRENDEL JOINED LEERINK PARTNERS LLC IN 2014 2

II. DRENDEL'S 2014 AGREEMENT WAS SUPERSEDED BY THE 2018 AGREEMENT WITH SVB 3

III. DRENDEL TERMINATED HIS EMPLOYMENT WITH NON-PARTY SVB SECURITIES ON MAY 16, 2022 5

IV. SVB FILED THE INSTANT ACTION SIXTEEN DAYS AFTER DRENDEL BEGAN EMPLOYMENT WITH RAYMOND JAMES 7

STANDARD OF REVIEW 7

ARGUMENT 8

I. THE PROPER PLAINTIFF IS NOT NAMED IN THIS ACTION 8

II. SVB IS NOT LIKELY TO SUCCEED ON THE MERITS 9

A. The 2018 Non-Compete Provision is Unenforceable 9

B. Drendel Did Not Breach the 2018 Non-Compete Provision Because the 2014 Notice Provision is No Longer Valid 15

C. SVB is Unlikely to Establish Damages 20

III. SVB CANNOT ESTABLISH IT WILL SUFFER IRREPARABLE HARM 21

IV. THE BALANCE OF THE EQUITIES FAVOR DRENDEL 24

V. AN INJUNCTION IS NOT IN THE PUBLIC INTEREST 25

CONCLUSION 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A & E Television Networks, LLC*,
2013 WL 1245453 (S.D.N.Y. Mar. 27, 2013) ........ 20

*Adecco USA, Inc. v. Staffworks, Inc.*,
2020 WL 7028872 (N.D.N.Y. Sept. 15, 2020) ........ 23

*Alpha Cap. Aktiengesellschaft v. Advanced Viral Rsch. Corp.*,
2003 WL 328302 (S.D.N.Y. Feb. 11, 2003) ........ 24

*Am. Broad. Cos. v. Wolf*,
420 N.E.2d 363 (N.Y. 1981) ........ 10

*Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*,
830 F.2d 13 (2d Cir. 1987) ........ 24

*Baldwin v. EMI Feist Catalog, Inc.*,
805 F.3d 18 (2d Cir. 2015) ........ 19

*Barbourville Diagnostic Imaging Ctr. v. Philips Med. Sys., Inc.*,
2016 WL 697135 (E.D. Ky. Feb. 19, 2016) ........ 19

*Bates Chevrolet Corp. v. Haven Chevrolet, Inc.*,
13 A.D.2d 27 (1st Dep't 1961) ........ 13

*BDO Seidman v. Hirshberg*,
712 N.E.2d 1220 (N.Y. 1999) ........ 10, 11, 13

*Beverly Glen Music, Inc. v. Warner Commc'ns, Inc.*,
178 Cal. App. 3d 1142 (Ct. App. 1986) ........ 20

*Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*,
771 F.3d 201 (4th Cir. 2014) ........ 7

*Cascades, Inc. v. Experis Fin. US, LLC*,
2014 WL 3891630 (W.D.N.Y. Aug. 7, 2014) ........ 16, 18

*Centro Tepeyac v. Montgomery Cty.*,
722 F.3d 184 (4th Cir. 2013) ........ 8

*Cenveo Corp. v. Diversapack LLC*,
2009 WL 3169484 (S.D.N.Y. Oct. 1, 2009) ........ 21

*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*,
369 N.E.2d 4 (N.Y. 1977) ........ 10, 11

*Cont'l Stock Transfer & Tr. Co. v. Sher-Del Transfer & Relocation Servs., Inc.*,
298 A.D.2d 336 (1st Dep't 2002) ........ 16

*DeVere Co. v. McColley*,
2014 WL 6473513 (W.D. Wis. Nov. 18, 2014) ........ 8

*Dewhurst v. Century Aluminum Co.*,
649 F.3d 287 (4th Cir. 2011) .......... 7

*Dewitt Stern Grp., Inc. v. Eisenberg*,
257 F. Supp. 3d 542 (S.D.N.Y. 2017) .......... 19

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
952 F.2d 802 (4th Cir. 1991) .......... 7

*Dolan v. Penn Millers Ins. Co.*,
2014 WL 2047515 (M.D. Pa. Jan. 22, 2014) .......... 8

*Estee Lauder Cos. Inc. v. Batra*,
430 F. Supp. 2d 158 (S.D.N.Y. 2006) .......... 14

*Flatiron Health, Inc. v. Carson*,
2020 WL 1320867 (S.D.N.Y. Mar. 20, 2020) .......... 12

*Globe Food Servs. Corp. v. Consol. Edison Co. of N.Y.*,
184 A.D.2d 278 (1st Dep't 1992) .......... 17, 18

*Goldbar v. Empire State Mut. Life Ins. Co.*,
5 A.D.2d 230 (1st Dep't 1958) .......... 16, 17

*Greenfield v. Philles Records*,
780 N.E.2d 166 (N.Y. 2002) .......... 16, 18

*Heartland Sec. Corp v. Gertenblatt*,
2000 WL 303274 (S.D.N.Y. Mar. 22, 2000) .......... 13

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*,
2021 WL 535485 (S.D.N.Y. Feb. 12, 2021) .......... 23

*Home Meridian Int'l, Inc. v. Longnecker*,
2013 WL 5430177 (M.D.N.C. Sept. 27, 2013) .......... 25

*Int'l Creative Mgmt., Inc. v. Abate*,
2007 WL 950092 (S.D.N.Y. Mar. 28, 2007) .......... 24

*Inv. Access Corp. v. Doremus & Co.*,
186 A.D.2d 401 (1st Dep't 1992) .......... 10

*Jacobson v. Sassower*,
489 N.E.2d 1283 (N.Y.1985) .......... 20

*Johnson v. Nextel Commc'ns, Inc.*,
660 F.3d 131 (2d Cir. 2011) .......... 9

*Kanan, Corbin, Schupak & Aronow, Inc. v. FD Int'l, Ltd.*,
797 N.Y.S.2d 883 (Sup. Ct. N.Y. Cty. 2005) .......... 12

*Kefalas v. Valiotis*,
197 A.D.3d 698 (2d Dep't 2021) .......... 17, 18

*Lab'y Corp. of Am. Holdings v. Kearns*,
84 F. Supp. 3d 447 (M.D.N.C. 2015) .......... 11

*Leo Silfen, Inc. v. Cream*,
278 N.E.2d 636 (N.Y. 1972) .... 11

*Lutz v. Case Farms, LLC*,
2020 WL 5111217 (W.D.N.C. Aug. 31, 2020) .... 8

*Maltby v. Harlow Meyer Savage Inc.*,
633 N.Y.S.2d 926 (Sup. Ct. N.Y. Cty. 1995) .... 14

*Mancuso v. L'Oreal USA, Inc.*,
2021 WL 365228 (D.N.J. Feb. 1, 2021) .... 16, 19

*Marsh USA Inc. v. Karasaki*,
2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) .... 15

*Matter of Primex Intl. Corp. v. Wal–Mart Stores*,
679 N.E.2d 624 (N.Y. 1997) .... 16

*McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co.*,
114 A.D.2d 165 (1st Dep't 1986) .... 22, 24

*Medtech Prod. Inc. v. Ranir, LLC*,
596 F. Supp. 2d 778 (S.D.N.Y. 2008) .... 17

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. de Linier*,
572 F. Supp. 246 (N.D. Ga. 1983) .... 22, 24, 25

*Misek-Falkoff v. Int'l Bus. Machines Corp.*,
854 F. Supp. 215 (S.D.N.Y. 1994) .... 20

*Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*,
70 A.D.2d 1021 (3d Dep't 1979) .... 24

*Natsource LLC v. Paribello*,
151 F. Supp. 2d 465 (S.D.N.Y. 2001) .... 14

*Northville Indus. Corp. v. Forth Neck Oil Terms. Corp.*,
100 A.D.2d 865 (2d Dep't 1984) .... 17, 18

*One Call Locators, Ltd. v. CenturyTel Serv. Grp., LLC*,
2017 WL 6017223 (D. Colo. Dec. 5, 2017) .... 16

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) .... 9

*Partners, Inc. v. Hart*,
298 F. App'x 238 (4th Cir. 2008) .... 25

*Poller v. BioScrip, Inc.*,
974 F. Supp. 2d 204 (S.D.N.Y. 2013) .... 11

*Prudential Sec., Inc. v. Plunkett*,
8 F. Supp. 2d 514 (E.D. Va. 1998) .... 15, 23, 25

*Reed, Roberts Assocs., Inc. v. Strauman*,
353 N.E.2d 590 (N.Y. 1976) .... 11

*Schron v. Troutman Sanders LLP*,
986 N.E.2d 430 (N.Y. 2013) .......... 16

*Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina*,
9 A.D.3d 805 (3d Dep't 2004) .......... 11

*Sheehy v. Andreotti*,
199 A.D.2d 148 (1st Dep't 1993) .......... 17

*Sutherland Glob. Servs., Inc. v. Sengupta*,
2021 WL 7184746 (W.D. Tex. Oct. 7, 2021) .......... 14

*Sutton v. E & B Giftware LLC*,
983 N.Y.S.2d 206 (Table) (Sup. Ct. N.Y. Cty. 2013) .......... 20

*Synergy Advanced Pharms., Inc. v. CapeBio, LLC*,
2010 WL 2194809 (S.D.N.Y. June 1, 2010) .......... 24

*Ticor Title Ins. Co. v. Cohen*,
173 F.3d 63 (2d Cir. 1999) .......... 11, 14

*W. Pocahontas Props. Ltd. P'ship*,
918 F.3d 353 (4th Cir. 2019) .......... 7

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 7

*Winters Bros. Recycling Corp. v. Jet Sanitation Serv. Corp.*,
885 N.Y.S.2d 714 (Sup. Ct. Nassau Cty. 2009) .......... 23

**Rules**

Rule 65 of the Federal Rules of Civil Procedure .......... 7

Defendant Michael Drendel ("Drendel") respectfully submits this Memorandum of Law in Opposition to the Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion") filed by Plaintiffs SVB Financial Group ("SVB Group") and SVB Securities Holdings LLC ("SVB Holdings," together with SVB Group, "SVB" or "Plaintiffs") in this action.

**PRELIMINARY STATEMENT**

Plaintiffs have filed the instant Motion in a baseless attempt to persuade this Court that its business would be irreparably damaged absent immediate intervention. However, SVB's arguments fail for several reasons. *First*—and most importantly—the wrong party is seeking to enforce the restrictive covenant at issue here. SVB Group and SVB Holdings are the named plaintiffs, but neither of those entities actually employed Drendel. Rather, Drendel's prior employer, SVB Securities LLC ("SVB Securities")—the only entity that could plausibly suffer any purported irreparable harm—was deliberately left out of this action in an attempt to avoid its obligation to arbitrate this dispute under FINRA rules. And this is not a matter of mere formality because investment banking is part of the heavily regulated securities industry, and Plaintiffs are *not* licensed to engage in that line of business. *Second*, putting aside the fact that the wrong entity is seeking relief, SVB cannot plausibly allege that it is facing irreparable injury such that it should be awarded extraordinary relief when it waited ***over two weeks*** to file the instant Motion. Not only was SVB put on notice that Drendel intended to begin working for a competitor, but SVB was made aware of his employment through multiple public announcements. Asserting that a three-month non-compete period is so critical when it waited more than 16 days to file for relief is simply disingenuous. *Finally*, as to the merits of Plaintiffs' claim, SVB cannot establish that the non-compete provision at issue here is both enforceable and was breached by Drendel. Specifically, the non-compete provision does not protect a legitimate interest, and even if it did, Drendel did not breach this provision as his notice of termination served to terminate

his employment immediately, and therefore, his non-compete period expired one day before beginning employment with a competitor. For all of these reasons, SVB's Motion must fail.

## STATEMENT OF FACTS

### I. DRENDEL JOINED LEERINK PARTNERS LLC IN 2014

Drendel is a healthcare investment banker that advises and represents domestic and international clients in mergers and acquisitions and other corporate finance transactions, primarily in the pharmaceutical sector. *See* Verified Complaint, Dkt. No. 1, ¶ 13 (hereinafter "Compl."). On March 11, 2015, Drendel joined the Investment Banking Department of Leerink Partners LLC as a Managing Director. In anticipation of his employment, Drendel signed an agreement dated December 9, 2014 ("2014 Agreement") detailing the terms of his employment. Declaration of Michael Drendel ("Drendel Decl.") attached hereto, Ex. A. The 2014 Agreement addressed all of the components of his employment including: (1) compensation and benefits; (2) resignation, retirement, and termination; (3) confidentiality and non-disclosure; (4) restrictions on Drendel's activities post-employment; (5) remedies and dispute resolution clauses; and (6) boilerplate contract provisions including, but not limited to, those related to governing law and entire agreement clauses.[1] *See id.*

In the section entitled, "Notice of Retirement/Resignation," Drendel agreed to the following notice provision ("2014 Notice Provision"):

> You shall not voluntarily retire, resign or otherwise terminate your employment relationship with the Company or any of its affiliates without first giving the Company at least **ninety (90) days prior written notice of the effective day of your retirement, resignation or other termination**.

[1] The 2014 Agreement indicates that it is to be "construed and interpreted in accordance with the laws of the State of New York." Drendel Decl., Ex. A at 8.

*Id*. at 5 (emphasis added). Such notice provisions are designed to act as non-compete provisions and restrict employees from immediately competing against their employer. Instead of saying an employee cannot compete against them, which has certain legal challenges discussed below, the employer asks the employee to "tend their garden" for a period of time, which has the same impact.

## II. DRENDEL'S 2014 AGREEMENT WAS SUPERSEDED BY THE 2018 AGREEMENT WITH SVB

In 2018, SVB Group was contemplating the acquisition of Leerink Holdings LLC (the sole member of Leerink Partners LLC). *See* Compl., ¶¶ 8, 22; Drendel Decl., ¶ 4. In recognition of Drendel's role as an employee of Leerink Partners LLC, SVB Group offered Drendel revised employment terms and a retention bonus, contingent upon the merger and Drendel's continued employment with SVB Group's securities-licensed subsidiary, SVB Securities. This bonus and the revised terms of his continued employment were outlined in a November 11, 2018 Agreement ("2018 Agreement"). Drendel Decl., Ex. B. Similar to the 2014 Agreement, the 2018 Agreement addressed the components of Drendel's employment from that point forward including: (1) compensation; (2) resignation and termination; (3) confidentiality and non-disclosure; (4) restrictions on Drendel's activities post-employment; (5) remedies and dispute resolution clauses; and (6) boilerplate contract provisions including, but not limited to, those related to amendments, governing law, entire agreement, and severability.[2] *See id*. There are two key provisions in the 2018 Agreement relevant to this dispute, one of which Plaintiffs ignore.

*First*, in Section 4(d) entitled "On-Going Restrictions on Your Activities," instead of continuing the notice/garden leave arrangement outlined in the 2014 Notice Provision, the parties

[2] The 2018 Agreement also indicates that it and "all matters arising out of or relating to this Agreement, including its interpretation, construction, performance and enforcement" are to be "governed by the laws of New York." Drendel Decl., Ex. B at § 6(i).

entered into a specific non-compete ("2018 Non-Compete Provision") wherein Drendel agreed:

> From the effective date of this Agreement, **during the Restricted Period, you agree that you will not directly or indirectly act as a** proprietor, director, officer, **employee**, substantial shareholder (defined as a 5% or greater equity, voting or profit participation interest in a Competitive Enterprise), consultant, or partner in any **Competitive Enterprise**.

*Id*. at § 4(d) (emphasis added). Competitive Enterprise was defined, in relevant part, in Section 4(a)(1) to include "[a]ny business that engages in investment banking, commercial banking, sell-side equity research or securities sales and trading activities, in each case in the industries in which the Company or Leerink [Holdings LLC] performs services or offers products during the course of your employment," *id*. at § 4(a)(1), while Restricted Period was defined as "a period of the later of (i) 1 year following the Closing [of the merger] and (ii) during your employment and for **3 months following the termination of your employment** for any reason, *id*. at § 4(a)(2) (emphasis added). This "non-compete" purports to prohibit Drendel from <u>ANY</u> work with <u>ANY</u> Competitive Enterprise, whether he is seeking to be the CEO or the janitor. In effect, the 2018 Non-Compete Provision had the same design and benefit of the "Garden Leave" 2014 Notice Provision while similarly only restricting Drendel for, at most, three months post termination of employment. However, the 2018 Non-Compete Provision had the added benefit to SVB that it did not have to pay Drendel during this three-month time period. Thus, SVB enhanced its position by getting the same benefit without the additional cost.

*Second*, in Section 6(j), the 2018 Agreement included an integration clause ("2018 Integration Clause") that states:

> This Agreement sets forth the entire agreement between the parties, and **fully supersedes any and all prior agreements**, understandings, or representations between the parties pertaining to the subject matter of this Agreement.

*Id*. at § 6(j) (emphasis added). Plaintiffs ignore this critical provision.

As discussed above, the subject matter of *both* Agreements included: (1) compensation; (2) resignation and termination; (3) confidentiality and non-disclosure; (4) restrictions on Drendel's activities post-employment; (5) remedies and dispute resolution clauses; and (6) boilerplate contract provisions. Thus, by its own wording in the 2018 Integration Clause, the 2018 Agreement superseded the 2014 Agreement in totality.

SVB Group ultimately acquired Leerink Holdings LLC, with an effective date of January 4, 2019, *see* Compl., ¶ 31, and the 2018 Agreement—and only the 2018 Agreement—governed Drendel's employment going forward. It is important to note that Drendel's initial employment was with Leerink Partners LLC; after the merger, Leerink Partners LLC was renamed SVB Securities, and as a result, SVB Securities became Drendel's employer. SVB Securities is not a party to this action.

## III. DRENDEL TERMINATED HIS EMPLOYMENT WITH NON-PARTY SVB SECURITIES ON MAY 16, 2022

After more than three years with non-party SVB Securities, on May 16, 2022, Drendel gave notice of immediate termination of his employment. Compl., Dkt. No. 1-3, Ex. 3. SVB Securities acknowledged Drendel's notice in a letter dated May 17, 2022 ("May 17 Letter"). *See* Drendel Decl., Ex. C. In that May 17 Letter, SVB Securities incorrectly argued that the Agreements "require a notice period of three months" and "prohibit [Drendel], for three months, from directly or indirectly soliciting the trade or patronage of any clients or customers of the firm with whom [Drendel] had significant contact or obtained confidential information" while the 2018 Agreement "also contains a three-month non-compete." *Id.* at 1. SVB Securities further claimed that it "currently intend[s] to enforce [Drendel's] three-month notice period and expect[s] [Drendel] to comply fully with [his] restrictive covenants and other continuing legal obligations." *Id.*

On June 7, 2022, undersigned counsel wrote to SVB Securities by letter ("June 7 Letter")

stating that in light of the 2018 Integration Clause, the "only operative agreement after [the 2018 Agreement's] execution relating to Mr. Drendel's employment is the 2018 Agreement." Declaration of Peter S. Fruin ("Fruin Decl.") attached hereto, Ex. 1 at 1. Reserving all rights regarding the validity of the restrictive covenants in the 2018 Agreement, the letter offered to "honor those obligations through August 16, 2022, three months from [Drendel's] termination date; and all other obligations set forth in the 2018 Agreement for the time periods specified, conditioned upon SVB not taking any positions contrary to, or in addition to, those identified in the 2018 Agreement." *Id.* at 1. Given that Drendel was not required to give notice under the 2018 Agreement, the June 7 Letter requested both a way in which to return the paychecks Drendel had received after May 16, 2022 and that all future payments cease. *Id.* at 1–2.

By letter dated June 10, 2022, non-party SVB Securities rejected Drendel's interpretation and stated that it "expect[ed] Mr. Drendel to comply with both his three-month notice period and his restrictive covenants—until they actually expire." *See* Fruin Decl., Ex. 2 at 1. As a result, according to non-party SVB Securities, SVB Securities would combine the two provisions designed to keep Drendel from competing and make that period six months and not three (under SVB Securities' flawed position, Drendel would remain an employee until August 16, 2022 and at that point, the 2018 Non-Compete Provision would begin and remain in effect through November 16, 2022). *See id.* at 2.

On August 15, 2022, Drendel returned all money paid to him against his will by non-party SVB Securities from May 16, 2022 through August 15, 2022. *See* Fruin Decl., Ex. 3. Non-party SVB Securities refused to accept the returned funds, arguing, without citation to any authority, that the 2014 Notice and 2018 Non-Compete Provisions were enforceable in tandem. Compl., Dkt. No. 1-7, Ex. 7.

On August 17, 2022, after not competing against non-party SVB Securities for three months, Drendel began employment with Raymond James & Associates, Inc. (hereinafter "Raymond James"). *See* Drendel Decl., ¶¶ 10-12. Drendel's employment was announced in multiple channels, including through an August 17, 2022 press release by Raymond James and on Drendel's LinkedIn page. *See* Compl., ¶¶ 43, 47.

## IV. SVB FILED THE INSTANT ACTION SIXTEEN DAYS AFTER DRENDEL BEGAN EMPLOYMENT WITH RAYMOND JAMES

On September 2, 2022—***sixteen days*** after Drendel started his employment with Raymond James and it was publicly announced—SVB Group and SVB Holdings—two entities for whom Drendel never worked—filed the Complaint and instant Motion in this action. Drendel's employer, SVB Securities, is not a named plaintiff in this proceeding.

## STANDARD OF REVIEW

A party seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Rule 65") must clearly show: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Dewhurst v. Century Aluminum Co*., 649 F.3d 287, 290 (4th Cir. 2011).

A preliminary injunction is "'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief'" and may never be awarded "'as of right.'" *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (quoting *Winter*, 555 U.S. at 22, 24). "A court should not impose an injunction lightly," *Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth*., 771 F.3d 201, 207 (4th Cir. 2014), as the granting of such a remedy involves "the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Direx Israel, Ltd. v.*

*Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (internal quotation marks omitted); *see also Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc) (same); *Lutz v. Case Farms, LLC*, 2020 WL 5111217, at *3 (W.D.N.C. Aug. 31, 2020) (same).

## ARGUMENT

### I. THE PROPER PLAINTIFF IS NOT NAMED IN THIS ACTION

SVB's Motion must fail outright because SVB has failed to name the real party in interest—Drendel's prior employer, SVB Securities. While SVB concedes that SVB Securities "was Drendel's employer at all times relevant," Plaintiffs argue that SVB Securities "is not a plaintiff in this action because it was not a named party to the agreement at issue here." Compl., ¶ 8. This justification for SVB's purposeful failure to name SVB Securities as a party is meritless. Drendel worked for, and was paid by, SVB Securities during the entire period of his employment. Therefore, SVB's argument that the 2018 Non-Compete Provision was justified by a legitimate interest is necessarily the interest of Drendel's employer.[3] Similarly, any contention that SVB will suffer irreparable harm because it puts SVB at risk of losing clients or goodwill is necessarily irreparable harm to Drendel's non-party employer, not Plaintiffs. Moreover, Plaintiffs' purposeful decision not to sue on behalf of SVB Securities is not a mere formality. As previously noted, investment banking is part of the heavily regulated securities industry, and firms that engage in that line of work must be registered and overseen by securities regulators, including FINRA and the Securities and Exchange Commission. Without proper registration, any company that engages in investment banking is in violation of federal securities laws. Thus, Plaintiffs cannot plausibly

[3] *Cf. Dolan v. Penn Millers Ins. Co.*, 2014 WL 2047515, at *7 (M.D. Pa. Jan. 22, 2014), *report and recommendation adopted in part*, 2014 WL 2047897 (M.D. Pa. May 19, 2014), *aff'd*, 625 F. App'x 91 (3d Cir. 2015); *DeVere Co. v. McColley*, 2014 WL 6473513, at *1 (W.D. Wis. Nov. 18, 2014).

have suffered the harm they allege because they are not licensed to engage in the line of work they claim generated the alleged harm. For these reasons, non-party SVB Securities is a necessary party to this action, and in light of SVB's deliberate decision not to include SVB Securities as a plaintiff here, this Motion must fail.[4]

## II. SVB IS NOT LIKELY TO SUCCEED ON THE MERITS

Turning to the substance of SVB's Motion, SVB argues that it is likely to succeed in demonstrating that Drendel has breached the 2018 Non-Compete Provision. Not so. Under New York law, to establish a breach of contract, SVB must demonstrate "'(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.,* 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc*., 660 F.3d 131, 142 (2d Cir. 2011)). As outlined below, SVB will be unlikely to show at least three of the four necessary elements: (1) a valid contractual provision; (2) breach by Drendel; or (3) damages.[5]

### A. The 2018 Non-Compete Provision is Unenforceable

SVB's argument that it is likely to demonstrate that the 2018 Non-Competition Provision is enforceable is without merit. *See* Plaintiffs' Memorandum of Law in Support of their Motion, Dkt. No. 2-1, at 12 (hereinafter "Memo.")

As a general matter, courts disfavor restrictive covenants as there is a strong public policy

---

[4] Drendel suspects that the reason Plaintiffs did not name SVB Securities is that Plaintiffs are blatantly and improperly forum shopping or hoping to get two bites at the apple. SVB Securities is a FINRA member, the self-regulatory agency designed to regulate securities industry members. By rule, SVB Securities is required to arbitrate all disputes like this one with its former employees. *See* FINRA Rule 13200. Indeed, its failure to do so can be deemed a direct violation of Rule 2110 and "conduct inconsistent with just and equitable principles of trade." *See* FINRA IM-13000.

[5] At this time, Drendel does not contest that SVB performed under the 2018 Agreement.

"favoring robust and uninhibited competition." *Am. Broad. Cos. v. Wolf,* 420 N.E.2d 363, 368 (N.Y. 1981); *Inv. Access Corp. v. Doremus & Co.*, 186 A.D.2d 401, 404 (1st Dep't 1992). An employer's desire to "insulate himself from competition" should not outweigh the "loss of a man's livelihood." *See Am. Broad. Cos.,* 420 N.E.2d at 368 ("[O]nce the term of an employment agreement has expired, the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition."); *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 369 N.E.2d 4, 6 (N.Y. 1977) ("Since there are 'powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood,' restrictive covenants which tend to prevent an employee from pursuing a similar vocation after termination of employment are disfavored by the law.") (internal citations omitted); *Inv. Access Corp*, 186 A.D.2d at 404 ("Case law reflects 'general judicial disfavor of anticompetitive covenants contained in employment contracts' and 'the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition.'"). As a result, after termination, "the availability of equitable relief against the former employee diminishes appreciably," *Am. Broad.*, 420 N.E.2d at 367, and restrictive covenants will only be enforced "if reasonably limited temporally and geographically, and then only to the extent necessary to protect the employer from unfair competition which stems from the employee's use or disclosure of trade secrets or confidential customer lists," *Columbia Ribbon*, 369 N.E.2d at 6.

When considering these factors, New York courts have adopted a common-law standard of reasonableness. Specifically, a restrictive covenant is reasonable only if it is (1) necessary to protect the employer's legitimate interests; (2) not unreasonably burdensome to the employee; (3) reasonable in time and area; and (4) not harmful to the general public. *BDO Seidman v.*

*Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999); *see also Reed, Roberts Assocs., Inc. v. Strauman*, 353 N.E.2d 590, 592 (N.Y. 1976). A violation of any of these prongs "renders the covenant invalid." *BDO Seidman*, 712 N.E.2d at 1223.[6]

i. <u>The 2018 Non-Compete Provision Does Not Protect a Legitimate Employer Interest</u>

As to the first prong, courts have generally limited what is deemed a legitimate employer interest to: "(1) the protection of trade secrets; (2) where the employer is exposed to 'special harm' due to the 'unique' nature of an employee's services; or (3) the goodwill of an employer's business." *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 215 (S.D.N.Y. 2013). Here, SVB relies solely on the third interest—goodwill of its business.[7] However, SVB utterly fails to establish that

[6] SVB alleges that if the 2018 Non-Compete Provision is overbroad, the Court may partially enforce the restrictive covenant to the extent necessary to protect SVB's legitimate interest. *See* Memo. at 12 n.2. SVB fails to acknowledge that whether partially to enforce the covenant "involves 'a case specific analysis, focusing on the conduct of the employer in imposing the terms of the agreement'" and is justified "if an employer demonstrates, in addition to the legitimate business interest that … 'an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct.'" *Scott, Stackrow & Co., C.P.A.'s, P.C. v. Skavina,* 9 A.D.3d 805, 807 (3d Dep't 2004) (quoting *BDO Seidman*, 712 N.E.2d at 1226). Here, SVB cannot do so. Moreover, North Carolina—where Drendel is located—views restrictive covenants unfavorably such that "when a non-compete is unreasonably broad, courts are 'severely' limited in their ability to blue-pencil offensive provisions. A court 'at most may choose not to enforce a distinctly separable part of a covenant in order to render the provision reasonable. It may not otherwise revise or rewrite the covenant.'" *Lab'y Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 458 (M.D.N.C. 2015) (internal citations omitted).

[7] Even if SVB were to argue that its client list was a confidential trade secret or there was special harm due to the unique nature of Drendel's services, those arguments would fail. *First*, SVB does not have a client list. It is a holding company without clients or lists. *Second*, if it had such a list, SVB's alleged client list is readily ascertainable as it includes, as noted by SVB, both "potential acquirers of specialty and generic pharmaceutical companies ('buy-side') and companies in this sector looking to sell ('sell-side') themselves or substantial assets." Compl., ¶ 14; *see Leo Silfen, Inc. v. Cream*, 278 N.E.2d 636, 639 (N.Y. 1972) ("[W]here the customers are readily ascertainable outside the employer's business as prospective users or consumers of the employer's services or products, trade secret protection will not attach[.]"). *Third*, while Drendel's services may be of high worth to SVB, he does not provide sufficiently extraordinary or unique services to warrant relief. *See, e.g., Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999) ("Services that are not simply of value to the employer, but that may also truly be said to be special, unique or

the 2018 Non-Compete Provision is necessary to protect this purported interest.

As an initial matter, as already noted, neither Plaintiff is—or can be—in the relevant investment banking business, so neither has a sufficient interest to warrant emergency injunctive relief. But even setting that aside, while an employer "has a legitimate and protectable interest in preventing former employees from exploiting the client's goodwill, which was created and maintained at the employer's expense and effort," this only extends to "client relationships which the former employee had developed with the employer's clients during the tenure of his employment." *Kanan, Corbin, Schupak & Aronow, Inc. v. FD Int'l, Ltd.*, 797 N.Y.S.2d 883, 888 (Sup. Ct. N.Y. Cty. 2005).

On first glance, SVB's interest in its goodwill is untethered to the 2018 Non-Compete Provision; rather, that interest is arguably more protected by the non-solicitation provision to which Drendel also agreed but that, notably, SVB fails to mention. *See* Drendel Decl., Ex. B at § 4(c). However, even in considering this interest as it relates to the 2018 Non-Compete Provision, Plaintiffs were not Drendel's prior employer and do not have any clients. Moreover, the provision is unduly broad as it is not limited only to restricting Drendel from competing with SVB Securities by advising clients with whom Drendel worked during his employment there but instead prohibits Drendel from being employed by any Competitive Enterprise, in any capacity. For example, Drendel would be prohibited from being employed even as a janitor with a company that competes in any way with SVB Securities. This is patently unreasonable. *See, e.g., Flatiron Health, Inc. v. Carson*, 2020 WL 1320867, at *24 (S.D.N.Y. Mar. 20, 2020) (ruling that the non-compete was overbroad and noting that it would even bar the defendant "from working as a janitor"); *Heartland*

---

extraordinary may entitle an employer to injunctive relief."); *Columbia Ribbon*, 369 N.E.2d at 6. Moreover, SVB Securities has retained another investment banker in the same industry space that can attract and service clients. *See* Compl., ¶¶ 3, 15.

*Sec. Corp v. Gertenblatt*, 2000 WL 303274, at *9 (S.D.N.Y. Mar. 22, 2000) (finding non-compete unenforceable in part because "the employee would violate the provision, for example, if he were a janitor for another securities company"). Therefore, like in *BDO Seidman*, SVB's attempt to "[e]xtend[] the anti-competitive covenant to [SVB Securities'] clients with whom a relationship with defendant did not develop through assignments to perform . . . services would, therefore, violate the first prong of the common-law rule: it would constitute a restraint 'greater than is needed to protect' these legitimate interests." 712 N.E.2d at 1225. In sum, at best, SVB only maintains a legitimate interest over clients or customers that Drendel performed services for during the course of his employment with SVB Securities and for whom Drendel used SVB Securities' resources to recruit. Therefore, prohibiting Drendel from being employed at all—in any capacity—is not designed to protect a legitimate interest of SVB.

ii. <u>The 2018 Non-Compete Provision is Unreasonably Burdensome</u>

SVB argues that "Drendel will not suffer any unreasonable burden if this Court enforces the Non-Compete Provision." Memo. at 14. In support of this contention, SVB cites the total compensation Drendel has received during his employment with SVB Securities and that Drendel has received a portion of his annual salary for 2022, both of which are irrelevant. The fact that Drendel has been compensated for his employment with SVB Securities has no bearing on whether the 2018 Non-Compete Provision is enforceable after his termination.

Rather, "a significant consideration in determining the reasonableness of covenants against competition is the hardship which may be worked upon the employee in pursuing a livelihood and putting to gainful use the skills and experience he has acquired in his trade" after the employment ends. *Bates Chevrolet Corp. v. Haven Chevrolet, Inc.*, 13 A.D.2d 27, 29 (1st Dep't 1961). In that vein, courts consider "whether an employee receives continued consideration for his loyalty and good will" ***during*** the restrictive period. *Estee Lauder Cos. Inc. v. Batra*, 430 F. Supp. 2d 158,

180 (S.D.N.Y. 2006); *see Maltby v. Harlow Meyer Savage Inc.*, 633 N.Y.S.2d 926 (Sup. Ct. N.Y. Cty. 1995) (holding six-month covenant not to compete reasonable so long as employee continued to earn his salary), *aff'd*, 223 A.D.2d 516, 637 (1st Dep't 1996); *see also Ticor*, 173 F.3d at 71–72 ("The significance of the salary paid in *Maltby* was that it helped alleviate the policy concern that non-compete provisions prevent a person from earning a livelihood."). Here, while SVB makes special note of the fact that non-party SVB Securities attempted to compensate Drendel during the three-month period after he terminated his employment, that fact is simply irrelevant because it is not a term of the 2018 Agreement, the only in-force employment agreement Drendel had with SVB Securities when he terminated his employment. Drendel has returned those funds (that SVB Securities refuses to negotiate the check is its own voluntary decision) and has not used them in any way. At best, SVB Securities' efforts to remit money to Drendel during the non-compete period was an offer to modify the 2018 Agreement, which Drendel unequivocally rejected. Put simply, the 2018 Agreement did not provide for compensation during any non-compete period, and Drendel did not accept any payments SVB Securities attempted to make during his three-month non-compete period, and therefore, this restrictive covenant is unduly burdensome.

iii. <u>The 2018 Non-Compete Provision is Unreasonable in Scope</u>

SVB contends that the 2018 Non-Compete Provision is reasonable in time and geographic scope. Memo. at 13–14. However, SVB fails to acknowledge that even when the geographic scope and duration are reasonable, the restrictive covenant can still be unreasonable when it is not "otherwise reasonable and narrowly drawn to scope." *Natsource LLC v. Paribello,* 151 F. Supp. 2d 465, 471 (S.D.N.Y. 2001); *see also Sutherland Glob. Servs., Inc. v. Sengupta*, 2021 WL 7184746, at *9 (W.D. Tex. Oct. 7, 2021), *report and recommendation adopted*, 2022 WL 566191 (W.D. Tex. Jan. 19, 2022). As outlined above, the restriction in the 2018 Non-Compete Provision is overly broad in that it prohibits Drendel from being employed in any position with a competitor

in the investment banking industry, even if that position is entirely untethered from his roles and responsibilities at SVB Securities. For that reason, the 2018 Non-Compete Provision is unreasonable in scope.

iv. Enforcing the 2018 Non-Compete Provision Would be Harmful to the Public

Finally, in two sentences, SVB argues that enforcing the 2018 Non-Compete Provision would not be injurious to the public. Memo. at 15. Not so. In considering this prong, courts have evaluated whether there would be "public harm of restricting clients' freedom of choice." *Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *18 (S.D.N.Y. Oct. 31, 2008). In the financial services industry, "[c]lients should be free to deal with the broker of their choosing and not subjected to the turnover of their accounts to brokers associates associated with the firm but unfamiliar to the client." *Prudential Sec., Inc. v. Plunkett*, 8 F. Supp. 2d 514, 520 (E.D. Va. 1998). Therefore, by preventing Drendel—who was, as SVB concedes, one of two individuals at SVB Securities with a book of business, *see* Memo. at 1, Compl., ¶¶ 3, 15—from being employed entirely, the public, especially clients in this industry which may be engaged in or contemplating highly sensitive and time-critical transactions, is harmed as its freedom of choice has been severely restricted.

**B. Drendel Did Not Breach the 2018 Non-Compete Provision Because the 2014 Notice Provision is No Longer Valid**

Even if the 2018 Non-Compete Provision was valid, SVB still cannot prevail on its Motion because it cannot establish that Drendel breached the 2018 Non-Compete Provision. Specifically, the 2018 Integration Clause plainly indicates that the parties intended for the 2018 Agreement to supersede the 2014 Agreement in its entirety—therefore, the 2014 Notice Provision is no longer valid. As a result, when Drendel gave notice on May 16, 2022, his termination was effective immediately under the 2018 Agreement, and his three-month non-compete period expired on

August 16, 2022.

Although there is no "simple rule to be applied," courts look at the intent of the parties entering into an agreement when determining whether a new agreement supersedes a prior agreement. *Goldbar v. Empire State Mut. Life Ins. Co.*, 5 A.D.2d 230, 233–34 (1st Dep't 1958). Under New York law, "'[t]he best evidence of what parties to a written agreement intend is what they say in their writing.'" *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013) (quoting *Greenfield v. Philles Records*, 780 N.E.2d 166, 170 (N.Y. 2002)); *see also Cont'l Stock Transfer & Tr. Co. v. Sher-Del Transfer & Relocation Servs., Inc.*, 298 A.D.2d 336, 336 (1st Dep't 2002) (indicating that the "basic rule of contract law [] requires a clear expression of intention, best manifest in the language of the later writing, that the subsequent agreement supersedes the prior one"). As such, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield*, 780 N.E.2d at 170. Where a contract contains a merger clause, a court is obliged "'to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing.'" *Schron*, 986 N.E.2d at 434 (quoting *Matter of Primex Intl. Corp. v. Wal–Mart Stores*, 679 N.E.2d 624, 627 (N.Y. 1997)); *see Mancuso v. L'Oreal USA, Inc.,* 2021 WL 365228, at *3 (D.N.J. Feb. 1, 2021) ("New York law gives full effect to integration and merger clauses."). "Definitive language that the prior agreement is revoked, canceled, or superseded rescinds the prior contract even if the later contract does not pertain to precisely the same subject matter." *Cascades, Inc. v. Experis Fin. US, LLC*, 2014 WL 3891630, at *6 (W.D.N.Y. Aug. 7, 2014); *see also One Call Locators, Ltd. v. CenturyTel Serv. Grp., LLC*, 2017 WL 6017223, at *2 (D. Colo. Dec. 5, 2017). Such definitive languages includes "'a revocation and cancellation of the prior agreement,' 'supersedes' any prior agreement, [or] 'in lieu of and shall supersede' any prior

agreements." *Globe Food Servs. Corp. v. Consol. Edison Co. of N.Y.*, 184 A.D.2d 278, 279 (1st Dep't 1992) (internal citations omitted).

However, absent clear language in the agreement, intent can also be manifested through surrounding circumstances or extrinsic proof. *Goldbar,* 5 A.D.2d at 234. For example, if the later agreement relates to the same subject matter, it supersedes the first agreement "even where there is no integration and merger clause in the subsequent contract." *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 809–10 (S.D.N.Y. 2008); *see, e.g.*, *Sheehy v. Andreotti*, 199 A.D.2d 148, 150 (1st Dep't 1993) (in considering "the intentions and actions of the parties," the court held the later agreement superseded the first because the two agreements could not be "'construed in harmony'" because they provided for different remedies).

Ultimately, "'where the parties have clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement, the subsequent agreement extinguishes the old one and the remedy for any breach thereof is to sue on the superseding agreement.'" *Kefalas v. Valiotis*, 197 A.D.3d 698, 702 (2d Dep't 2021), *leave to appeal denied*, 183 N.E.3d 1213 (N.Y. 2022) (quoting *Northville Indus. Corp. v. Forth Neck Oil Terms. Corp.*, 100 A.D.2d 865, 867 (2d Dep't 1984), *aff'd* 477 N.E.2d 1102 (N.Y. 1985)).

In *Northville Indus. Corp.*, the defendant agreed, in a January 1979 letter, to sell home heating oil to the plaintiff. 100 A.D.2d at 866. In February of 1979 ("February Agreement"), the parties entered into a new agreement, which gave plaintiff the option to purchase defendant's excess oil inventory, and stated: "This Agreement shall be in lieu of and shall supersede any other agreements existing as of the date hereof between [the parties] relating to the purchase by [plaintiff] of No. 2 heating oil." *Id.* at 866–67. On appeal, the court held that the trial court erred in denying defendants' motion for summary judgment, finding that the February Agreement

"clearly and unequivocally provided that the February agreement was to be 'in lieu of' and would 'supersede' any other agreements existing as of that date between the parties." *Id*. at 867; *see also Kefalas*, 197 A.D.3d 698 ("[T]he language of the 2012 Purchase Agreement, including the merger clause in paragraph IX.L, demonstrates that the 2012 Purchase Agreement was intended to supersede and extinguish the parties' prior agreements[.]").

Here, like in *Northville Indus. Corp.*, the 2018 Integration Clause states that the 2018 Agreement "sets forth the entire agreement between the parties, and ***fully supersedes any and all prior agreements***, understandings, or representations between the parties pertaining to the subject matter of this Agreement." Drendel Decl., Ex. B at § 6(j) (emphasis added). Such definitive language (*i.e.*, "fully supersedes") leaves no room for questioning that the parties intended the 2018 Agreement to supersede all prior agreements, including the 2014 Agreement. *See Greenfield*, 780 N.E.2d at 70; *Globe Food Servs. Corp.,* 184 A.D.2d at 279 (requiring "definitive language" that has "such an effect as a matter of law, e.g., . . . '***supersedes'*** any prior agreement, 'in lieu of and shall supersede' any prior agreements") (emphasis added) (internal citations omitted).

Although notably silent on this issue—despite being on notice that Drendel's position is that the 2014 Agreement was superseded by and rendered null by the 2018 Agreement—SVB may attempt to argue that the 2018 Integration Clause only applies to those matters specifically addressed in the 2018 Agreement. This argument is meritless for several reasons. *First*, the definitive language in the 2018 Agreement that "all prior agreements" are "fully supersede[d]" serves to rescind the 2014 Agreement even if the 2018 Agreement "does not pertain to precisely the same subject matter." *See Cascades,* 2014 WL 3891630, at *6. *Second*, the 2018 Agreement does pertain to the same subject matter as the 2014 Agreement as the two contracts both address Drendel's employment, compensation, and post-employment obligations with Leerink Partners

LLC (or, following SVB Group's acquisition of Leerink Holdings LLC, SVB Securities). *See, e.g.*, *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 582 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 48 (2d Cir. 2018) ("The terms and subject matter of the 2007 and 2012 Employment Agreements address the same topic, [defendant's] employment conditions while at [plaintiff], and the agreements contain the same subjects, like compensation, termination, and indemnification."); *see also Barbourville Diagnostic Imaging Ctr. v. Philips Med. Sys., Inc.*, 2016 WL 697135, at *3 (E.D. Ky. Feb. 19, 2016).[8] Therefore, the 2018 Agreement addresses the same subject matter, and for that reason, it supersedes the 2014 Agreement.

Moreover, the fact that many, but not all, of the terms in the 2018 Agreement overlap with the terms of the 2014 Agreement indicates that the agreements address the same subject matter. Specifically, the 2018 Agreement did not solely address the retention bonus offered to Drendel; rather, it included general provisions governing Drendel's employment with SVB Securities that were similar or identical to those in the 2014 Agreement. *See, e.g.*, *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 29 (2d Cir. 2015) ("By granting EMI the same rights that it already owned under the 1951 Agreement in addition to the new interest . . . , the 1981 Agreement made it sufficiently clear that the parties intended to replace the earlier contract."). For example, the parties included another non-solicitation provision but chose to change the applicable time period. *See* Drendel

[8] To the extent SVB argues the 2018 Agreement was geared toward retention, rather than employment, that distinction is immaterial. In *Mancuso*, the court held that the Non-Competition and Confidentiality Agreement "addresse[d] [p]laintiff's obligations after her employment with [d]efendants ends" whereas the later "'Retention Agreement' incentivized [plaintiff] to remain employed with [defendant] and forgo other available professional opportunities' for a two year-period." 2021 WL 365228, at *3 (internal citations omitted). In that case, because the later agreement did not "contain any post-employment restrictive covenant," the agreements "address[ed] different aspects of [p]laintiff's employment with [d]efendants," and the later agreement "does not supersede or invalidate any portion" of the first. *Id.* Here, the 2018 Agreement does cover the same scope of matters including compensation, termination, and notably, post-employment restrictions.

Decl., Ex. B at §§ 4(a)(2), 4(c). At the same time, the 2018 Agreement did not include certain provisions that were in the 2014 Agreement—including the 2014 Notice Provision. Instead, the parties replaced the 2014 Notice Provision with the 2018 Non-Compete Provision, which has the same effect and benefit to SVB.[9] The fact that parties maintained certain provisions governing his employment while at the same time replacing other provisions related to the same subject matter further supports that the 2018 Agreement was intended to supersede the 2014 Agreement.[10] Simply put, the 2014 Agreement was superseded by the 2018 Agreement; therefore, even if the 2018 Non-Compete Provision were valid, Drendel did not breach it as he did not begin employment with Raymond James until after the three-month non-compete period expired.[11]

### C. SVB is Unlikely to Establish Damages

Finally, SVB argues—in one sentence—that Drendel's purported breach of the 2018 Non-Compete Provision "may already have caused SVB damage." Memo. at 16. SVB provides zero support for such an assertion and will be unable to do so (especially since SVB is not licensed to

---

[9] For this reason, even if the 2018 Agreement only supersedes certain provisions in the 2014 Agreement that relate to the same subject matter, the 2018 Non-Compete Provision would supersede the 2014 Notice Provision as it "relates to the same general purpose or address[es] the same general rights." *See A & E Television Networks, LLC*, 2013 WL 1245453, at *1 (S.D.N.Y. Mar. 27, 2013).

[10] To the extent there is any doubt or ambiguity, the 2018 Agreement must be construed "most strongly against" SVB and "favorably" to Drendel "who had no voice in the selection of its language." *See Jacobson v. Sassower*, 489 N.E.2d 1283, 1284 (N.Y.1985).

[11] Even if the 2014 Agreement was still in effect, the 2014 Notice Provision is still unenforceable as forcing Drendel to remain employed by SVB Securities is constitutionally impermissible. *See, e.g., Sutton v. E & B Giftware LLC,* 983 N.Y.S.2d 206 (Table) (Sup. Ct. N.Y. Cty. 2013) (finding that the company's recognition of the employee's termination of employment without complying with the notice provision could "easily be seen as a recognition of [the employee's] right to quit his employment in light of the bar on involuntary servitude contained in the Thirteenth Amendment to the United States Constitution"); *see also, e.g.*, *Misek-Falkoff v. Int'l Bus. Machines Corp.*, 854 F. Supp. 215, 228 n.37 (S.D.N.Y. 1994), *aff'd sub nom. Misek-Falkoff v. IBM*, 60 F.3d 811 (2d Cir. 1995); *Beverly Glen Music, Inc. v. Warner Commc'ns, Inc.,* 178 Cal. App. 3d 1142, 1144–45 (Ct. App. 1986).

engage in investment banking). Namely, although SVB repeatedly alleges that Drendel was in "active discussions with at least six potential clients interested in hiring SVB [Securities]'s Specialty Pharmaceuticals group" and "had direct involvement in multiple formal client engagements for transactions that have yet to be completed," Compl., ¶¶ 48–49, SVB provides no evidence that Drendel has engaged in any wrongdoing with respect to the confidential information he may have acquired during his employment with SVB Securities or that those clients have terminated their engagements or discussions with SVB Securities such that SVB Securities—let alone Plaintiffs—would be damaged. Indeed, Plaintiffs admit that SVB Securities employs at least one other banker with the same specific skill set as Drendel's and does not even attempt to explain why that banker could not step into Drendel's shoes and perform the exact same services on behalf of SVB Securities. Therefore, it is highly unlikely that SVB will be able to succeed on the merits of its breach of contract claim because it will be unable to prove damages.

## III. SVB CANNOT ESTABLISH IT WILL SUFFER IRREPARABLE HARM

In addition to failing to demonstrate likelihood of success on the merits,[12] SVB cannot prove that it will suffer irreparable injury in the absence of an injunction.

As an initial matter, while SVB argues that "Drendel threatens SVB with irreparable harm, namely the imminent risk of losing clients and goodwill," Memo. at 16, SVB fails to acknowledge that Drendel's former employer—the entity that would purportedly suffer such harm—is not even named in this action. Therefore, SVB cannot possibly demonstrate irreparable harm when the

[12] Furthermore, as outlined in detail above, SVB has failed to show that it will succeed on the merits—therefore, the remedies provisions in the Agreements are irrelevant. *See, e.g., Cenveo Corp. v. Diversapack LLC,* 2009 WL 3169484, at *5 (S.D.N.Y. Oct. 1, 2009) ("Because Cenveo has not shown a likelihood of success on the merits or raised sufficiently serious questions as to whether the Kristels have breached the Anti–Raiding Provisions, the Substantial Harm Provisions are rendered irrelevant.").

entity that would suffer such harm was deliberately not included as a plaintiff in this action, especially since SVB is not licensed to conduct the same business as that entity.

Putting aside SVB's failure to bring this suit on behalf of the correct entity, SVB cannot demonstrate irreparable harm for two additional reasons. First, despite being on notice that Drendel was going to begin his employment with Raymond James and subsequently learning of that employment on or around August 17, 2022, SVB waited over two weeks to file the instant Motion. If this relief were so critical, SVB would not have waited over 16 days to file. Therefore, any argument that emergency relief, like a temporary restraining order, is warranted is simply disingenuous.

Moreover, Plaintiffs' assertion that Drendel was involved in "active discussions with at least six potential clients interested in hiring SVB [Securities]'s Specialty Pharmaceuticals group" and with "multiple formal client engagements for transactions that have yet to be completed," Compl., ¶¶ 48–49, undercuts its own argument. Since SVB claims that Drendel was on "garden leave" for three months after he informed SVB Securities that he was terminating his employment, if Drendel really was essential to those deals, at minimum, SVB would have asked Drendel to assist it with those deals during that period. But neither SVB nor SVB Securities ever asked him to assist. *See* Drendel Decl., ¶ 13. This is further indication that such "irreparable harm" is non-existent, and if anything, has been over three months in the making.

Second, irreparable harm "mean[s] any injury for which money damages are insufficient." *McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co.*, 114 A.D.2d 165, 174 (1st Dep't 1986). Here, SVB's contention that the loss of goodwill constitutes irreparable harm, *see* Memo. at 16, falls flat as any loss of business that SVB alleges it may suffer is quantifiable. In an analogous case, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. de Liniere*, the court held that "vaguely defined loss of

business momentum" was not sufficient to constitute irreparable harm in the financial services industry because the "real loss is in commission revenue generated by [the employee] from former [employer's] customers, and that can be readily calculated from the commissions he and his new firm derive from the old [employer's] customers." 572 F. Supp. 246, 248–49 (N.D. Ga. 1983); *see also Adecco USA, Inc. v. Staffworks, Inc.*, 2020 WL 7028872, at *3 (N.D.N.Y. Sept. 15, 2020), *on reconsideration in part,* 2020 WL 7024376 (N.D.N.Y. Nov. 30, 2020), *on reconsideration*, 2021 WL 66563 (N.D.N.Y. Jan. 7, 2021) ("Where there is no allegation concerning an ongoing/indeterminate loss, however, courts regularly find that money damages are sufficient and decline to award injunctive relief."). Therefore, in the absence of any allegations that potential losses would be indeterminate,[13] SVB can quantify the loss of certain customers, if there are any, and therefore, awarding injunctive relief would be inappropriate.[14]

SVB hangs its hat on the fact that the 2018 Agreement contains a provision indicating that a violation of the restrictive covenants would constitute irreparable harm. *See* Memo. at 16–17; *see also* Drendel Decl., Ex. A at 5; Drendel Decl., Ex. B at § 4(b). This argument is misleading as "[p]arties may not contractually circumvent an independent judicial determination of irreparable harm." *Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, 2021 WL 535485, at

[13] Furthermore, there is no allegation that Drendel has used "confidential propriety information (protected trade lists or confidential customers lists), ascertained by wrongful means, to woo clients away from" SVB Securities such that it would be "impossible, or even extremely difficult, to calculate an award of damages sufficient to compensate" SVB Securities. *See Winters Bros. Recycling Corp. v. Jet Sanitation Serv. Corp.*, 885 N.Y.S.2d 714 (Sup. Ct. Nassau Cty. 2009) (finding that economic loss is compensable by money damages and does not constitute irreparable harm); *see also Prudential Sec.,* 8 F. Supp. 2d at 519. In fact, Drendel has not used any confidential information, nor has he solicited any current customers of SVB. *See* Drendel Decl., ¶¶ 12, 15. Therefore, absent any allegations of wrongdoing, SVB would have no basis to argue that damages are not quantifiable.

[14] Moreover, SVB's argument that Drendel might "obtain new clients that would have gone to SVB," Memo. at 17, is speculative at best and cannot form the basis for injunctive relief.

*8 (S.D.N.Y. Feb. 12, 2021) (citing cases). Rather, as SVB acknowledges, Drendel's agreement to these provisions is just one factor in considering whether SVB actually suffers irreparable harm. *See, e.g., Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co*., 830 F.2d 13, 16 (2d Cir. 1987) ("[T]the contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate."); *Synergy Advanced Pharms., Inc. v. CapeBio, LLC,* 2010 WL 2194809, at *6 n.60 (S.D.N.Y. June 1, 2010) ("However, in *Ticor*, the contractual provision providing for injunctive relief was only one reason among 'several' that supported the Second Circuit's finding of irreparable harm. *Ticor* does not stand for the proposition that irreparable harm is presumed where a relevant Agreement provides for the entry of injunctive relief.") (internal citations omitted); *Int'l Creative Mgmt., Inc. v. Abate*, 2007 WL 950092, at *6 (S.D.N.Y. Mar. 28, 2007) ("This Court is aware of no authority indicating that such a contract provision entitles the plaintiff to a per se finding of irreparable harm."); *Alpha Cap. Aktiengesellschaft v. Advanced Viral Rsch. Corp.*, 2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003) (indicating that "a contractual stipulation to the effect that irreparable harm exists is not itself dispositive"). Given that there is no other grounds for a finding of irreparable harm, the contract provisions themselves are insufficient.

## IV. THE BALANCE OF THE EQUITIES FAVOR DRENDEL

SVB's request for injunctive relief should be denied also because the balance of equities favor Drendel. When balancing the equities, "'it must be shown that the irreparable injury to be sustained is more burdensome [to the plaintiff] than the harm caused to defendant through imposition of the injunction.'" *McLaughlin, Piven, Vogel, Inc.*, 114 A.D.2d at 174 (quoting *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 70 A.D.2d 1021, 1022 (3d Dep't 1979)). Here, if injunctive relief were to be granted, Drendel would be prevented from working in his chosen profession and securing income from "a business that thrives on commissions from

regular clients." *See Merrill Lynch*, 572 F. Supp. at 49. Because this loss would bear more heavily on Drendel than on a large financial services firm like SVB Securities, such a disparity supports denial of injunctive relief. *See id.* ("Because the effect of the loss of income pending the outcome of this dispute would, by reason of the differing financial strength of a large brokerage firm and an individual broker, bear far more heavily on Mr. de Liniere than on Merrill Lynch, that disparity of effect supports denial of an injunction."); *see also Prudential Sec.,* 8 F. Supp. 2d at 519 (same). For these reasons, the balance of equities favor Drendel, and an injunction should not be granted.

## V. AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

Finally, while SVB argues that it is in the public interest to enforce agreements between private parties, Memo. at 17–18, courts must take special care not to enforce ***invalid*** agreements. Here, as outlined above, the 2018 Non-Compete Provision is unenforceable, and for that reason, it is not in the public interest to grant injunctive relief. *See, e.g., Tech. Partners, Inc. v. Hart*, 298 F. App'x 238, 244 (4th Cir. 2008) ("Just as it is a matter of public interest to enforce valid non-compete agreements, similarly it is a matter of public interest to see that non-compete agreements that are likely invalid do not receive the extraordinary relief of a preliminary injunction."); *see also Home Meridian Int'l, Inc. v. Longnecker*, 2013 WL 5430177, at *2 (M.D.N.C. Sept. 27, 2013). Moreover, as addressed above, the public benefits from competition; therefore, seeking to prohibit Drendel from working in his chosen profession is stifling the American drive for competition, choice, and lower costs.

## CONCLUSION

For all of these reasons, Drendel respectfully requests that this Court deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction in its entirety.

Dated: September 9, 2022

Respectfully submitted,

MAYNARD, COOPER & GALE, P.C.

*/s/ Peter S. Fruin*

Joshua B. Baker (NC Bar No. 43390)
Peter S. Fruin (admitted *pro hac vice*)
1901 Sixth Avenue North
Suite 1700
Birmingham, Alabama 35203
T: (205) 254-1000
jbaker@maynardcooper.com
pfruin@maynardcooper.com

Margaret M. Siller (admitted *pro hac vice*)
1201 Villa Place
Suite 200
Nashville, Tennessee 37212-3030
T: (629) 258-2253
msiller@maynardcooper.com

*Counsel for Defendant Michael Drendel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2022, the following parties were served through the Court's electronic filing system:

Jared E. Gardner
Mark S. Pincus
Gardner Skelton PLLC
505 East Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 335-0350
Facsimile: (704) 390-7027
jared@gardnerskelton.com
mark@gardnerskelton.com

*Counsel for SVB Financial Group and SVB Securities Holdings LLC*

*/s/ Peter S. Fruin*
Of Counsel