# Exhibit B

November 11, 2018

Michael Drendel
At the address on file with the Company

Re: **Retention Letter Agreement**

Dear Michael:

This **RETENTION LETTER AGREEMENT** (the "*Agreement*") is entered into by and among you, SVB Financial Group (the "*Company*") and Leerink Holdings LLC ("*Leerink*"). As you are aware, the Company is contemplating the acquisition of Leerink pursuant to an Agreement and Plan of Merger to be entered on or around the date of this Agreement (the "*Merger Agreement*"). In recognition of your role as a key employee of Leerink and your importance to the integration of Leerink with the Company following the completion of the merger (the "*Closing*"), you have been selected to receive a special retention bonus in accordance with the terms of this Agreement. The effectiveness of this Agreement (other than Section 4 hereof) and your right to receive the retention bonus are contingent on the occurrence of the Closing and premised upon your continued employment with Leerink or its affiliates at the Closing. In the event that the Merger Agreement pursuant to which the acquisition of Leerink is contemplated is terminated in accordance with its terms, this Agreement (including Section 4 hereof) shall be of no further force or effect.

**1. Retention Bonus**

(a) The aggregate amount of your potential special retention bonus is $2,000,000, of which 50% will be in the form of cash (the "*Retention Cash Bonus*") and 50% will be in the form of restricted shares of the Company (the "*Retention Restricted Shares*" and together with the Retention Cash Bonus, the "*Retention Bonus*").

(b) Subject to requisite approvals by the Company's Board of Directors (or the Compensation Committee thereof), the Retention Restricted Shares will be granted to you under the Company's 2006 Equity Incentive Plan no later than 30 days following the Closing (or, if such date occurs within a "blackout period" under the Company's trading policy, the first trading date thereafter), with the number of shares comprising such award determined based on the Company's 10-trading day volume weighted average stock price on the day prior to the parties execution of the Merger Agreement. If the Company's Board of Directors (or the Compensation Committee thereof) does not approve the grant of the Retention Restricted Shares, then your Retention Bonus shall be payable entirely in the form of cash.

(c) Subject to the conditions below, the Retention Cash Bonus will be paid and the Retention Restricted Shares will vest and become free of restrictions, in each case, ratably over a period of five years, with vesting occurring on each anniversary of the Closing, subject to your continued employment in good standing with the Company through the applicable vesting date. Vested Retention Restricted Shares will remain subject to any applicable blackout periods and applicable insider trading, hedging, pledging and/or other similar policies. The Retention Bonus will be subject to withholding for applicable income and payroll taxes or otherwise as required by law; provided that, unless you make an election pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended (the "*Internal Revenue Code*") with respect to the Retention Restricted Shares, you may require the Company to satisfy your withholding obligation through the withholding of shares subject to the award of Retention Restricted Shares. Your Retention Bonus will be in addition to (and will not be in lieu of) any annual discretionary bonus, commissions or other incentive compensation amounts you may otherwise be entitled to receive (or may become entitled to receive) from the Company or Leerink.

**2. Termination**

(a) ***Termination by the Company without Cause or for Good Reason***. In the event the Company terminates your employment without Cause (as defined below), you resign for Good Reason (as defined below) or your employment is terminated due to your death or Disability (as defined below), in each case, prior to the fifth anniversary of Closing, any outstanding portion of your Retention Bonus will vest in full and be paid to you or your estate, as applicable, as soon as practicable (but no later than sixty (60) days) after such employment termination date, provided that you or your estate, as applicable, comply with any continuing obligations under Section 4 of this Agreement and sign and do not revoke the Company's standard release of claims (as then in effect) in favor of the Company and its affiliates no later than fifty-five (55) days after the employment termination date. For purposes of the foregoing,

(1) "*Cause*" means (i) intentional and willful misconduct (including any repeated unexplained or unjustified absence from the Company or Leerink or repeated, willful and flagrant insubordination) in the performance of reasonably and legally assigned duties for the Company or Leerink, which remains uncured more than thirty (30) days following written notice from the Company or Leerink, as applicable, of its belief that there is Cause for termination under this clause (i), (ii) an act of embezzlement, fraud, dishonesty, or breach of fiduciary duty to the Company or Leerink, (iii) a deliberate disregard of the written rules of the Company which results in loss, damage or injury to the Company or Leerink; (iv) any unauthorized disclosure of any of the secrets or confidential information of the Company, to the extent such disclosure would have constituted "cause" with respect to a similarly-situated employee of the Company in accordance with past practice; (v) inducing any client or customer of the Company to break any contract with the Company or inducing any principal for whom the Company acts as agent to terminate such agency relations; (vi) engaging in any conduct which constitutes unfair competition with the Company; or (vii) any act which results in you being removed from any office of the Company or Leerink by any bank regulatory, securities regulatory or self-regulatory agency, after any and all appeal periods have expired. Except for clause (vii) above, any determination by the Company that Cause exists must be made reasonably and in good faith.

(2) "*Disability*" means long-term disability as defined under the Company's welfare benefit plan applicable to you and from which you may receive a long-term disability benefit.

(3) "*Good Reason*" means (i) a material reduction of your base salary; (ii) a material reduction in your principal duties and/or responsibilities with the Company and its affiliates as in effect immediately prior to such reduction; (iii) a relocation of your principal place of employment by more than 25 miles from your principal place of employment immediately prior to the Closing without your consent; (iv) a material breach by the Company or its affiliates of any agreement between the Company (or any of its affiliates) and you, including the failure to pay any amounts due under any such agreement; or (v) (A) the Company's failure to set the Earned Compensation Ratio (as defined in the Merger Agreement) at least at 60% for each calendar year beginning with 2019 and continuing for each subsequent year up to and including 2023 (the "*Performance Period*") or (B) the Company taking any action to prohibit the pay out by Leerink of an Earned Compensation Ratio of at least 60% during the Performance Period or taking any other action to interfere with the pay out by Leerink of an Earned Compensation Ratio of at least 60% during the Performance Period that actually results in an Earned Compensation Ratio of less than 60% for any calendar year during the Performance Period, in the case of each of (A) or (B), without the prior written consent of the Employee Representatives (as defined in the Merger Agreement) in accordance with the Merger Agreement. In each case, before you resign for Good Reason, you must have provided written notice to the Company of your intent to resign for Good Reason and a description of the conditions in reasonable detail that you contend constitute Good Reason, and the Company (or its affiliates) shall have failed to cure such conditions within 45 days of such notice, unless such conditions are not curable.

(b) ***Termination of Employment for Other Reasons***. If your employment with the Company or its affiliates terminates prior to the fifth anniversary of the Closing for any reason other than (i) your termination by the Company without Cause, (ii) your resignation from the Company for Good Reason or (iii) your death or Disability, any outstanding portion of your Retention Bonus will terminate and be forfeited, without any payment or delivery in respect thereof.

**3. Confidentiality**

(a) This Agreement and the amount of your Retention Bonus are confidential and, subject to the requirements of applicable law, should not be discussed with anyone (including co-workers and Leerink's advisors) other than the signers of this Agreement, the contact person specified at the end of this Agreement, members of your family and your financial and legal advisors who will also be under an obligation to keep the terms of this Agreement confidential. Subject to the foregoing, until a general announcement by Leerink, internally or publicly, of the sale process, the existence of the sale process is confidential and should not be discussed with anyone (including co-workers). While some employees may have been told about the sale process and that they will be eligible for a special retention bonus, many other employees will not. Out of consideration for them and to ensure the integrity of the sale process, you are asked to

maintain the confidentiality of this Agreement. We are relying on your sensitivity and professionalism in observing this request.

(b) In the course of your employment with and involvement with the Company, Leerink and their respective affiliates, you have obtained, or may obtain, confidential information, confidential knowledge or confidential data concerning the Company, Leerink and their respective affiliates' businesses, strategies, operations, clients, customers, prospects, financial affairs, organizational and personnel matters, policies, procedures and other nonpublic matters, or concerning those of third parties. You hereby covenant and agree that, at any time during or after your employment, you will not disclose any Confidential Information, except when required to perform your duties to the Company or one of its affiliates, by law or judicial process, and that all Confidential Information remains the sole property of the Company, Leerink and each of their applicable affiliates.

> "*Confidential Information*" means all non-public information concerning trade secrets, know-how, software, developments, inventions, processes, technology, designs, the financial data, strategic business plans or any proprietary or confidential information, whether tangible or intangible, documents or materials in any form or media, including (without limitation) any of the foregoing relating to research, operations, finances, current and proposed products and services, vendors, customers, advertising and marketing, and other non-public, proprietary, and confidential information of the Company or Leerink.

(c) The foregoing confidentiality provision contained herein is in addition to and not in limitation of your duties as an officer, employee or service provider under applicable law. For the avoidance of doubt, nothing in this Agreement limits, restricts or in any other way affects your communicating with any governmental agency or entity concerning matters relevant to the governmental agency or entity. You and the Company agree that no confidentiality or other obligation you owe to the Company or Leerink prohibits you from reporting possible violations of U.S. Federal law or regulation to any governmental agency or entity under any whistleblower protection provision of U.S. Federal or U.S. State law or regulation (including Section 21F of the Securities Exchange Act of 1934 or Section 806 of the Sarbanes-Oxley Act of 2002) or requires you to notify the Company or Leerink of any such report. In making any such report, however, you are not authorized to disclose communications with counsel that were made for the purpose of receiving legal advice, that contain legal advice or that are protected by the attorney work product or similar privilege. You are hereby notified that the immunity provisions in Section 1833 of title 18 of the United States Code provide that an individual cannot be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that is made (1) in confidence to federal, state or local government officials, either directly or indirectly, or to an attorney, and is solely for the purpose of reporting or investigating a suspected violation of the law, (2) under seal in a complaint or other document filed in a lawsuit or other proceeding, or (3) to your attorney in connection with a lawsuit for retaliation for reporting a suspected violation of law (and the trade secret may be used in the court proceedings for such lawsuit) as long as any document containing the trade secret is filed under seal and the trade secret is not disclosed except pursuant to court order.

## 4. On-Going Restrictions on Your Activities

(a) ***General Effect.*** You agree that the provisions of this Section 4 will apply from the date hereof and for the period specified below after you cease being employed by the Company. This Section 4 uses the following defined terms:

(1) "*Competitive Enterprise*" means (i) any business that engages in investment banking, commercial banking, sell-side equity research or securities sales and trading activity, in each case in the industries in which the Company or Leerink performs services or offers products during the course of your employment, (ii) any investment funds business that is in competition with a fund operated by the Company or any of its subsidiaries that is in operation or is actively being marketed during the course of your employment or (iii) any other activity in which the Company or Leerink engages during the course of your employment and in which you participate; provided, in each case, that your employment by, or provision of services to, any business or entity which owns or operates a Competitive Enterprise that constitutes less than 10% of such business' or entity's total revenues as of the last completed fiscal year prior to the termination of your employment shall not constitute your activity in a Competitive Enterprise for purposes of this Agreement so long as you do not engage and are not involved in the portion of the business that would otherwise represent a Competitive Enterprise.

(2) "*Restricted Period*" means a period of the later of (i) 1 year following the Closing and (ii) during your employment and for 3 months following the termination of your employment for any reason. Notwithstanding the foregoing, if you resign for Good Reason in respect of an event occurring during the Performance Period under clause (v) of the definition of Good Reason above, the Restricted Period shall in no event extend for longer than 3 months following the termination of your employment and; provided, further, notwithstanding the foregoing, that if the Company or Leerink terminates your employment without Cause or you resign for Good Reason (other than termination for Good Reason under clause (v) of the definition of Good Reason above), in each case, prior to the first anniversary of Closing, the Restricted Period will terminate upon the earlier of the periods described in clauses (i) and (ii).

(b) ***Employee Importance to the Company and the Effect of this Section 4.*** You acknowledge that:

(1) In the course of your employment by the Company, you will have access to confidential and proprietary information and to all or part of the Company's client base and may profit from the goodwill associated with the Company. On the other hand, in view of your access to confidential and proprietary information and your importance to the Company, if you violate the terms of this Section 4, the Company will likely suffer significant harm but the amount of the loss to the Company would be

uncertain and not readily ascertainable. This Agreement provides you with substantial additional compensation over your current employment arrangements. In return for the compensation you may receive from the Company and to induce the Company to enter into this Agreement, and in light of the potential harm you could cause the Company, you agree to the provisions of this Section 4. The Company would not have entered into this Agreement if you did not agree to this Section 4.

(2) This Section 4 may limit your ability to earn a livelihood in a Competitive Enterprise. You acknowledge, however, that complying with this Section 4 will not result in economic hardship for you or your family.

(c) ***Non-Solicitation.*** From the effective date of this Agreement, during the Restricted Period, you agree that you will not directly or indirectly (i) solicit customers or clients of the Company, Leerink or any of their subsidiaries to terminate their relationship with the Company, Leerink, or any of their subsidiaries or otherwise solicit such customers or clients to compete with any business of the Company, Leerink or any of their subsidiaries, or (ii) solicit or offer employment to any person who has been employed by the Company, Leerink, or any of their subsidiaries at any time during the 12 months immediately preceding the termination of your employment. Notwithstanding the foregoing, this Section 4(c) shall not preclude you from hiring following the termination of your employment any individual who responds to any public advertisement or general solicitation not directed specifically at such individual so long as such individual has not been solicited individually in addition to any public advertisement or general solicitation.

(d) ***Non-Compete.*** From the effective date of this Agreement, during the Restricted Period, you agree that you will not directly or indirectly act as a proprietor, director, officer, employee, substantial shareholder (defined as a 5% or greater equity, voting or profit participation interest in a Competitive Enterprise), consultant, or partner in any Competitive Enterprise.

(e) ***Notice to New Employers.*** Before you accept employment with any other person or entity while any provision of this Section 4 is in effect, you will provide the prospective employer with written notice of the provisions of this Section 4.

(f) ***Validity***. The parties acknowledge that the potential restrictions on your future employment imposed by this Section 4 are reasonable in both duration and geographic scope and in all other respects.

(g) ***Injunction and Other Remedies***. You agree that (i) violating, or threatening to violate, any part of this Section 4 would cause damage to the Company that cannot be measured or repaired, (ii) the Company, therefore, is entitled to seek an injunction, restraining order or other equitable relief restraining any actual or threatened violation of this Section 4 and shall also be entitled to seek monetary damages and any other applicable remedy; (iii) no bond will need to be posted for the Company to receive such an injunction, order or other relief; and (iv) no proof will be required that monetary damages for violations of this Section 4 would be difficult to calculate and that remedies at law would be inadequate.

5. **Existing Deferred Compensation Entitlements**. You acknowledge and agree that vesting of your account balance under the Amended and Restated Executive Nonqualified Excess Plan of Leerink Partners LLC and the 2018 Executive Nonqualified Excess Plan of Leerink Partners LLC, each as may be amended from time to time (the "Deferred Compensation Plans") will not accelerate at Closing on account of a "Change in Control Event" (as defined in the applicable plan document). All other terms of your awards (and any election you may have made with respect to such awards) under the Deferred Compensation Plans, including the definitions of "Cause" and "Good Reason" that apply to outstanding awards under the Deferred Compensation Plans, shall remain in full force and effect, except that clause (v) of the definition of "Good Reason" herein shall be added to the definition of "Good Reason" under the Deferred Compensation Plans (as may be amended, replaced or supplemented from time to time).

6. **General Provisions**

(a) ***Compliance.*** During your employment with the Company you shall comply in full with (i) all applicable laws, orders and regulations, (ii) the Company's Code of Ethics and other written policies, guidelines and procedures, in each case, as in effect from time to time; and (iii) the applicable employee manual as in effect from time to time.

(b) ***Not a Contract for Other Benefits***. The Retention Bonus will not count toward or be considered in determining, if applicable at any time, severance or employment payments or benefits due under any applicable law, any plan, program, policy or arrangement sponsored or maintained by the Company, and is not subject to any employer matching contribution under any benefit or deferred compensation plan.

(c) ***Consideration; Acknowledgement***. This Agreement is entered into as a material inducement to the Company in consideration of the mutual covenants contained in this Agreement. You and the Company acknowledge the receipt and sufficiency of the consideration to this Agreement and intend this Agreement to be legally binding. You acknowledge that you have the right to consult with counsel before signing this Agreement.

(d) ***Amendments and Waivers***. Any provision of this Agreement may be amended or waived but only if the amendment or waiver is in writing and signed, in the case of an amendment, by you and the Company or, in the case of a waiver, by the party that would have benefited from the provision waived.

(e) ***Bank Regulatory and other Limitations***. If any payment under this Agreement would be a golden parachute payment within the meaning of Section 18(k) of the Federal Deposit Insurance Act or would otherwise be prohibited under any other applicable law, rule or regulation, then the total payment will be reduced to the greatest amount that could be made to you without there being a violation of such applicable law, rule or regulation.

(f) ***Counterparts***. This Agreement may be executed as counterparts, each of which will constitute an original and all of which, when taken together, will constitute one agreement.

(g) ***Administration***. The Company will have the authority to administer and interpret this Agreement in its sole and reasonable discretion and any determinations made by the Company will be final, binding and conclusive.

(h) ***Taxes***. Any amounts payable or otherwise provided under this Agreement are subject to withholding for applicable federal, state and local taxes or otherwise as required by law. The Retention Bonus is intended to be a "short-term deferral" that does not constitute "nonqualified deferred compensation" subject to Section 409A of the Internal Revenue Code ("*Section 409A*"), to the extent applicable, and this Agreement will be interpreted, administered and construed consistent with such intent. Any amendment to the Deferred Compensation Plans pursuant to Section 5 of this Agreement shall be effected in a manner that complies with Section 409A, and accordingly, to the maximum extent permitted, Section 5 of this Agreement shall be interpreted and administered to be in compliance therewith.

(i) ***Governing Law***. This Agreement shall in all respects be governed by the laws of New York, without giving effect to its conflicts of law principles, govern all matters arising out of or relating to this Agreement, including its interpretation, construction, performance and enforcement.

(j) ***Entire Agreement.*** This Agreement sets forth the entire agreement between the parties, and fully supersedes any and all prior agreements, understandings, or representations between the parties pertaining to the subject matter of this Agreement.

(k) ***Severability***. It is the desire and intent of the parties that the provisions of this Agreement be enforced to the fullest extent permissible. In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder hereof will not in any way be affected or impaired thereby and any such provision or provisions will be enforced to the fullest extent permitted by law. Moreover, if any one or more of the provisions contained in this Agreement is held to be excessively broad as to duration, scope, activity or subject, such provisions shall be construed by limiting and reducing them so as to be enforceable to the maximum extent compatible with applicable law.

(l) ***Waiver of Certain Rights***. To the extent applicable, effective as of the Closing, you hereby irrevocably agree to waive and do hereby waive any and all rights to which you have been, are or may be entitled under the Registration Rights Agreement, dated September 7, 2007, by and among the Leerink, Lovell Minnick Equity Partners II LP, PL Holdings I Ltd, Leerink Swann Massachusetts Business Trust and certain holders of Class C Units of Leerink, including you, including any rights to request for registration under such registration rights agreement.

* * *

At the Company, we recognize that our most valuable assets are our employees and that our employees are essential to our past and future success. We are excited to welcome you to the SVB team and look forward to your continued contributions to the success of Leerink as it becomes part of the SVB organization. Please contact Jim Boylan at Jim.Boylan@Leerink.com

with any questions regarding your Retention Bonus or this Agreement. Please confirm your acceptance of the terms of this Agreement by signing where indicated below.

Very truly yours,

SVB Financial Group

By: Greg Becker
President and Chief Executive Officer

Leerink Holdings LLC

By: Jeffrey A. Leerink
Chairman and Chief Executive Officer

Accepted and Agreed:

11-11-18

Date:

Michael Drendel

*[Signature Page to Retention Agreement]*

Very truly yours,

SVB Financial Group

By: Greg Becker
President and Chief Executive Officer

Leerink Holdings LLC

By: Jeffrey A. Leerink
Chairman and Chief Executive Officer

Accepted and Agreed:

Date:

Michael Drendel

*[Signature Page to Retention Agreement]*

Very truly yours,

SVB Financial Group

By: Greg Becker
President and Chief Executive Officer

Leerink Holdings LLC

By: Jeffrey A. Leerink
Chairman and Chief Executive Officer

Accepted and Agreed:

Date:

Michael Drendel

*[Signature Page to Retention Agreement]*