UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00457-RJC-DCK

| | |
|---|---|
| SVB SECURITIES HOLDINGS LLC and SVB FINANCIAL GROUP, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **Order** ) |
| MICHAEL DRENDEL, | ) ) |
| Defendant. | ) ) ) |

**THIS MATTER** comes before the Court on Plaintiffs' SVB Financial Group and SVB Securities Holdings LLC's Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion"). (Doc. No. 2). For the reasons stated herein, the Motion is **DENIED**.

## I. BACKGROUND

1. The Parties

Non-party SVB Securities LLC[1] is an investment bank, registered broker-dealer, and subsidiary of Plaintiffs SVB Financial Group and SVB Securities Holdings LLC. Defendant Michael Drendel ("Drendel") is a health care investment banker. (Doc. No. 1 ¶ 12). Between March 2015 and August 2022, Drendel worked as a health care investment banker for SVB Securities LLC (formerly known as Leerink Partners LLC) on the Specialty Pharmaceuticals team. (*Id.*).

---

[1] Although SVB Securities LLC was Drendel's employer, according to Plaintiffs, it was not named as a plaintiff in this action because it is not a signatory to the relevant agreement Plaintiffs contend Drendel breached (the 2018 Retention Agreement). Drendel argues SVB Securities LLC is not a named plaintiff in this action in an attempt to avoid its obligation to arbitrate this dispute under FINRA Rules.

While employed at SVB Securities LLC, Drendel advised and represented domestic and international clients in mergers and acquisitions ("M&A") transactions involving companies in the specialty and generic pharmaceutical sector. (*Id.* ¶ 13). Drendel's clients included potential acquirers of specialty and generic pharmaceutical companies and companies looking to sell themselves or substantial assets. (*Id.* ¶ 14). When he resigned, as discussed below, he was a Senior Managing Director, head of SVB Securities LLC's Charlotte office, and the most senior investment banker on the Specialty Pharmaceuticals team. (*Id.* ¶ 12).

2. Drendel Joins Leerink Partners LLC

On December 10, 2014, Drendel signed an offer letter with Leerink Partners LLC (the "2014 Offer Letter"). (*Id.* ¶ 20). Under the 2014 Offer Letter, Drendel began working for Leerink Partners LLC in March 2015. (*Id.*). Among other things, the 2014 Offer Letter includes the following provision:

> Notice of Retirement/Resignation.
>
> You shall not voluntarily retire, resign or otherwise terminate your employment relationship with the Company or any of its affiliates without first giving the Company at least ninety (90) days prior written notice of the effective day of your retirement, resignation or other termination. Such written notice shall be sent by certified mail to Leerink Partners LLC, Attn: Human Resources Department, 1 Federal Street, Boston MA 02110. The Company retains the right to waive the notice requirement in whole or in part or to place you on paid leave for all or part of this ninety (90) day period. In the alternative, at any time after you give notice, the Company may, but shall not be obligated to provide you with work and (i) require you to comply with such conditions as it may specify in relation to transitioning your duties and responsibilities; (ii) assign you other duties; or (iii) withdraw any powers vested in, or duties assigned to you.

(*Id.* ¶ 21; Doc. No. 1-1 at 6). This is referred to as the garden leave provision. (Doc. No. 1 ¶ 21). The 2014 Offer Letter did not contain a separate non-compete provision.

3. SVB Financial Group Acquires Leerink Partners LLC

In the fall 2018, Plaintiff SVB Financial Group began negotiations to acquire the Leerink businesses, including Leerink Partners LLC and Leerink Holdings LLC. (*Id.* ¶ 22). In connection

2

with those negotiations, on November 11, 2018, Drendel, Plaintiff SVB Financial Group, and Leerink Holdings LLC (now Plaintiff SVB Securities Holdings LLC) entered into a retention agreement, contingent on the completion of the acquisition (the "2018 Retention Agreement"). (*Id.*). Under the 2018 Retention Agreement, in recognition of Drendel's status as a "key employee of Leerink," Drendel would receive a mixed cash and stock retention bonus worth $2,000,000.00, if Drendel remained with the merged company for five years after the acquisition's closing date. (*Id.* ¶ 24). Under the agreement, each year for five years, one-fifth of the retention bonus would vest and be paid on the anniversary of the closing date on which Drendel remained with SVB Securities LLC. (*Id.*). The 2018 Retention Agreement also contains the following non-compete provision:

> (d) **Non-Compete.** From the effective date of this Agreement, during the Restricted Period, you agree that you will not directly or indirectly act as a proprietor, director, officer, employee, substantial shareholder (defined as a 5% or greater equity, voting or profit participation interest in a Competitive Enterprise), consultant, or partner in any Competitive Enterprise.

(Doc. No. 1-2 at 7). The Restricted Period is defined as "a period of the later of (i) 1 year following the Closing and (ii) during your employment and for 3 months following the termination of your employment for any reason." (*Id.* at 6). Competitive Enterprise includes, among others, "any business that engages in investment banking, commercial banking, sell-side equity research or securities sales and trading activity, in each case in the industries in which the Company or Leerink performs services or offers products during the course of your employment." (*Id.*).

On January 4, 2019, the acquisition closed, and the 2018 Retention Agreement became effective. (Doc. No. 1 ¶ 31). As a result of the acquisition, SVB Financial Group acquired Leerink Holdings LLC (now known as SVB Securities Holdings LLC) and Leerink Partners LLC (now known as SVB Securities LLC). (*Id.*). After the acquisition, Drendel remained with SVB

3

Securities LLC for some time and received $1.2 million pursuant to the 2018 Retention Agreement. (*Id.* ¶ 32).

4. Drendel Resigns

On May 16, 2022, Drendel resigned from SVB Securities LLC in order to work for Raymond James, another investment bank. (*Id.* ¶ 35). Of relevance, Drendel's resignation email states: "Per our discussion this morning, this email serves as notice that I am resigning from the firm effective immediately." (Doc. No. 1-3). SVB Securities LLC accepted Drendel's notice of resignation. (Doc. No. 1 ¶ 36). However, according to Plaintiffs, Drendel's notice of resignation ignored the 90-day written notice provision required before effective resignation (the garden leave provision) under the 2014 Offer Letter. (*Id.* ¶¶ 35-36). Therefore, Plaintiffs view Drendel's notice of resignation as the start of the 90-day garden leave period before Drendel's resignation became effective. (*Id.*). Based on the garden leave provision and SVB Securities LLC's intent to enforce such provision, Plaintiffs calculates Drendel's effective termination date as August 14, 2022, and the restricted period under the non-compete provision through November 14, 2022. (Doc. No. 1 ¶ 38). To that end, by two letters dated May 17, 2022, SVB Securities LLC notified Drendel and Raymond James's general counsel that it "intend[s] to enforce [the] three-month notice period" contained in the 2014 Offer Letter after which it expected Drendel to comply with the non-compete provision in the 2018 Retention Agreement. (*Id.* ¶ 37; Doc. No. 1-4 at 2; Doc. No. 1-5 at 2). On the other hand, Drendel asserts the 2014 Offer Letter's garden leave provision is effectively a non-compete provision which was superseded by the non-compete provision in the 2018 Retention Agreement, such that Drendel's notice of resignation was effective immediately. Drendel points to the integration clause in the 2018 Retention Agreement, which states:

4

> (j) **Entire Agreement.** This Agreement sets forth the entire agreement between the parties, and fully supersedes any and all prior agreements, understandings, or representations between the parties pertaining to the subject matter of this Agreement.

(Doc. 1-2 at 9).

SVB Securities LLC continued to pay Drendel his salary between May 16 and August 14, 2022, consistent with its position on Drendel's effective termination date, in the form of six direct deposits totaling $79,747.12. (Doc. No. 1 ¶ 39). Drendel did not do any work during that time, or metaphorically speaking, he was "tending his garden." (*Id.*). By letter dated August 15, 2022, Drendel, through counsel, sought to return the $79,747.12, asserting the position that his termination was effective as of May 16, 2022, when he provided notice. (Doc. No. 1 ¶ 40; Doc. No. 1-6). SVB Securities LLC did not accept the returned funds. (Doc. No. 1 ¶ 40; Doc. No. 1-7). On August 17, 2022, Drendel began working for Raymond James as a Managing Director for the healthcare investment banking practice, in Charlotte, North Carolina. (Doc. No. 1 ¶¶ 42-47).

### A. Procedural Background

Thereafter, Plaintiffs SVB Financial Group and SVB Securities Holdings LLC filed this action bringing a claim for breach of contract, asserting Drendel breached the non-compete provision in the 2018 Retention Agreement, and seeking an injunction and damages. (Doc. No. 1). That same day, Plaintiffs filed a Motion for Temporary Restraining Order and for Preliminary Injunction (the "Motion") asking the Court to enjoin Drendel from (a) working in the health care investment banking industry for Raymond James or any other competitor of SVB Securities LLC until after November 14, 2022; and (b) otherwise violating the Non-Compete Provision of his 2018 Retention Agreement on or before November 14, 2022. (Doc. No. 2). Drendel opposes the Motion. (Doc. No. 11).

## II. STANDARD OF REVIEW

Temporary restraining orders and preliminary injunctions are extraordinary remedies "that may only be awarded upon a clear showing that the plaintiff is entitled to such relief' and may never be awarded 'as of right.'" *Paradies Shops, LLC v. Brookstone Charlotte, LLC*, No. 3:19-cv-00631, 2019 WL 6337818, at *1 (W.D.N.C. Nov. 26, 2019) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). "The standard for granting either a TRO or a preliminary injunction is the same and is well established." *Paradies Shops, LLC*, , 2019 WL 6337818 at *1. The party seeking the preliminary injunction must demonstrate all of the following: (1) it is likely to succeed on the merits of its claim; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. *Id.* at *2; *Pashby*, 709 F.3d at 320. The decision is within the district court's discretion. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).

## III. DISCUSSION

### A. Choice of Law

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599-600 (4th Cir. 2004). Here, the Court's jurisdiction is based on diversity of citizenship, and the Court must apply North Carolina's choice of law rules. Under North Carolina law, the interpretation of a contract is governed by the law of the place where the contract was made, unless "parties to a contract have agreed that a given jurisdiction's substantive law shall govern" in which case such provision "will be given effect." *Bueltel v. Lumber Mut. Ins. Co.*, 518 S.E.2d 205, 209 (N.C. Ct. App. 1999). The 2018 Retention Agreement is governed by New York law, and neither party disputes that New York law applies here. Accordingly, the Court will apply New York law to Plaintiffs' breach of contract claim.

6

### B. Likelihood of Success on the Merits

"[P]laintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013) (citations omitted). Plaintiffs need not show a "certainty of success" but must make a "clear showing" that they are likely to succeed at trial. *Id.* Here, relying on the 2014 Offer Letter's garden leave provision, Plaintiffs bring a claim for breach of contract, asserting that Drendel breached the 2018 Retention Agreement's non-compete provision when he began working as an investment banker for Raymond James before November 14, 2022.

Under New York law, the elements of a breach of contract claim are: (1) the existence of a contract between plaintiffs and defendant; (2) performance of the plaintiffs' obligations under the contract; (3) breach of the contract by the defendant; and (4) damages to the plaintiffs caused by the defendant's breach. *Grewal v. Cuneo Gilbert & LaDuca LLP*, No. 13-CV-6836 (RA), 2018 WL 4682013, at *4 (S.D.N.Y. Sept. 28, 2018). Drendel asserts Plaintiffs failed to demonstrate elements one, three, and four by arguing that the non-compete provision is unenforceable, Drendel did not breach the non-compete provision, and Plaintiffs did not demonstrate damages. For purposes of Plaintiffs' Motion, the Court need only consider the third element: breach of the non-compete provision.

New York law gives full effect to integration and merger clauses. *Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 301 (S.D.N.Y. 1999). "Even in the absence of an integration and merger clause, under New York law, a subsequent contract regarding the same subject matter supersedes the prior contract." *Id.* (internal quotation marks omitted); *Dewitt Stern Group, Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 581-82 (S.D.N.Y. 2017). However, "[a] subsequent contract not pertaining to 'precisely the same subject matter' will not supersede an earlier contract unless the

7

subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." *Alessi Equipment, Inc. v. American Piledriving Equipment, Inc.*, 578 F. Supp. 3d 467, 504 (S.D.N.Y. Jan. 6, 2022). "Moreover, the fact that a subsequent contract contains provisions which are of the same subject matter as those in an earlier agreement is not sufficient to supersede the entire contract; rather, a subsequent agreement supersedes only those terms of the earlier contract that are of the same subject matter." *Id.* "When determining if a particular provision is superseded by a provision in a subsequent contract, courts look to (1) whether there is an integration and merger clause that explicitly indicates that the prior provision is superseded; (2) whether the two provisions have the same general purpose or address the same general rights; and (3) whether the two provisions can coexist or work in tandem." *Dewitt Stern Group, Inc.*, 257 F. Supp. 3d at 581-82; *Alessi Equipment, Inc.*, 578 F. Supp. 3d at 504-05.

Here, the Court does not find that the 2018 Retention Agreement entirely superseded the 2014 Offer Letter. The 2014 Offer Letter is an employment agreement whereas the 2018 Retention Agreement is largely an agreement dealing with the retention of Drendel post-merger, not an entire employment agreement. For example, while the 2018 Retention Agreement addresses a retention bonus, it does not include, among other things, a provision for Drendel's regular compensation, benefits, title, or responsibilities, all of which would be expected in an employment agreement. Therefore, the 2018 Retention Agreement does not entirely cover the same subject matter as the 2014 Offer Letter such that it entirely supersedes the 2014 Offer Letter.

However, under New York law, specific provisions of the 2018 Retention Agreement may supersede specific provisions of the 2014 Offer letter. The Court concludes this issue presents a close legal question for which the Plaintiffs must make a "clear showing" that they are likely to

8

succeed on the merits when asking for the extraordinary relief they seek, and they failed to do that here.[2]  The Court reaches this conclusion applying the factors set forth in *Dewitt* and *Alessi*.

First, the 2018 Retention Agreement contains an integration clause that supersedes "any and all prior agreements, understanding, or representations between the parties pertaining to the subject matter of [the 2018 Retention Agreement]." (Doc. No. 1-2 at 9).  In other words, the 2018 Retention Agreement's provisions supersede all prior provisions pertaining to the same subject matter.  Second, Plaintiffs failed to demonstrate that the 2014 Offer Letter's garden leave provision and 2018 Retention Agreement's non-compete provision do not cover the same general subject matter, purpose, and rights.  Although accomplished differently the heart of both the garden leave and non-compete provisions appear to have the same general purpose: to prevent Drendel from working for a competitor for three months after resigning from SVB Securities LLC.  Plaintiffs persuasively argue the garden leave provision serves various purposes other than to operate as a non-compete, such as to assist with transition, but ultimately failed to demonstrate for the extraordinary relief requested that the purpose of the garden leave provision is not to prevent competition.  Indeed, that is precisely what occurred here, Drendel did not work for three months after he resigned from SVB Securities LLC.  Additionally, given Plaintiffs' assertion of Drendel's

---

[2] Plaintiffs also argue that the 2018 Retention Agreement did not supersede the 2014 Offer Letter because they were not parties to it, which for purposes of the Motion only, the Court finds unpersuasive.  Under New York law, integration clauses can cover non-parties who function, for purposes of a transaction, as party of the same entity expressly covered by the integration clause. *ACIM, LLC v. Nissan North Am., Inc.*, 17 Civ. 729 (LGS), 2019 WL 935424 (S.D.N.Y. Feb. 26, 2019).  The 2018 Retention Agreement was premised on Drendel's employment and continued employment with SVB Securities LLC, the party to the 2014 Offer Letter.  After the merger, SVB Securities LLC is the party that continued to employ Drendel pursuant to the 2018 Retention Agreement, and performed, at least in part, under the 2018 Retention Agreement.  Plaintiffs position seems inconsistent with its position that it is entitled to assert rights arising from the 2014 Offer Letter vis-à-vis the garden leave provision, and also inconsistent with its claim of damages and irreparable harm related to Drendel's employment with SVB Securities LLC.   This argument also undercuts Plaintiffs' argument that SVB Securities LLC need not be a plaintiff in this case.

senior level position and importance as an employee to SVB Securities LLC, the Court finds it unusual that 2014 Offer Letter contained the garden leave provision, but did not otherwise contain a non-compete provision, unless the purpose of the garden leave provision was to restrain competition. Further, the structure of both agreements, in which the garden leave or non-compete provisions are discussed next to or in tandem with the non-solicitation restrictions, shed light on the purpose of the garden leave provision. Last, while the garden leave and non-compete provisions can coexist and work in tandem, by stacking the garden leave period and the non-compete period, such stacking would in effect result in a six month non-compete period. Stacking the periods without stating in one or both agreements that stacking would occur seems an unusual result to the Court and inconsistent with the plain three month non-compete period, particularly when non-competes are disfavored by New York law. For purposes of the Motion, Plaintiffs did not specifically point the Court to a case where similar stacking of like periods occurred or was permitted. Plaintiffs also argue that stacking the provisions to effectively result in a six month non-compete period is precisely what they compensated Drendel for in the 2018 Retention Agreement. However, the Court understands that the compensation Drendel received was largely related to remaining as an employee of SVB Securities LLC post-merger, not a six month non-compete period, which the agreements do not plainly state nor do they reference stacking of the two provisions.

For these reasons, Plaintiffs failed to demonstrate a likelihood of success on the merits that Drendel breached the 2018 Retention Agreement. To be clear, the Court is not ruling on the ultimate merits of this case, including whether the 2018 Retention Agreement's non-compete clause superseded the 2014 Offer Letter's garden leave provision or whether Drendel breached the 2018 Retention Agreement. Additionally, it is not reaching a determination as to the proper parties

for relief. Instead, the Court is holding that, this issue presents a close legal question related to a legally disfavored restrictive covenant, and for purposes of the Motion only, Plaintiffs failed to make a "clear showing" of a likelihood of success on the merits for the extraordinary and emergency relief they request.[3] Because Plaintiffs failed to demonstrate a likelihood of success on the merits, the Court need not consider the remaining factors for a temporary restraining order and preliminary injunction.

IV.   **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. No. 2) is **DENIED**.

**SO ORDERED.**

Signed: September 21, 2022

Robert J. Conrad, Jr.
United States District Judge

---

[3] Plaintiffs' counsel also stated at the hearing on their Motion that the Motion "is the case." However, the Court does not see the Motion as the entirety of the case. Certainly, if Plaintiffs ultimately prove that Drendel breached the 2018 Retention Agreement, they may be entitled to damages in an amount they later prove and which they assert will be significant.

11