IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: 3:22-cv-00457

| |
|---|
| SVB FINANCIAL GROUP and SVB SECURITIES HOLDINGS LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>MICHAEL DRENDEL,<br><br>*Defendant.* |

**DEFENDANT MICHAEL DRENDEL'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' VERIFIED COMPLAINT**

Defendant Michael Drendel ("Drendel"), by and through his undersigned attorneys, hereby files his Answer and Affirmative Defenses to the Verified Complaint (ECF No. 1) of Plaintiffs SVB Financial Group ("SVBFG"), and SVB Securities Holdings LLC ("Holdings," and together with SVBFG, "Plaintiffs") and states as follows. To the extent any allegation is not specifically admitted, it is expressly denied.[1]

**NATURE OF THE CASE**

1. Drendel admits he is "Charlotte-based former Senior Managing director in SVB's health care investment banking group" and that he has "started working as a Managing Director for Raymond James." Except as so admitted, Drendel denies the allegations in paragraph 1.

[1] SVB Securities LLC ("SVB") is not a party to this litigation. However, because it is referred to in the Verified Complaint, and Drendel must respond to the allegations relating to SVB, Drendel has provided an identification for this entity as SVB.

2. Drendel states that he gave notice and resigned from SVB on May 16, 2022 and that he started working for Raymond James on or about August 17, 2022. Except as so stated, Drendel denies the allegations in paragraph 2.

3. Drendel states that he was a "senior investment banker on SVB's Specialty Pharmaceutical team, advising and representing domestic and international clients on mergers and acquisitions (M&A) transactions" and was "one of only two Specialty Pharmaceutical team members with a book of business[.]" Except as so stated, Drendel denies the allegations in paragraph 3.

4. Drendel is without information or knowledge sufficient to form a belief as to the allegations that SVB has "six potential clients who remain active prospects and could collectively generate at least $20 million in fees for SVB" and "multiple formal client engagements for transactions that have yet to be completed, which could collectively generate at least $10 million in fees for SVB in the next 12 months." Drendel denies the remaining allegations in paragraph 4.

5. Drendel denies the allegations in paragraph 5.

## PARTIES

6. Drendel is without information or knowledge sufficient to form a belief as to the allegations in paragraph 6.

7. Drendel is without information or knowledge sufficient to form a belief as to the allegations in paragraph 7.

8. Drendel denies that SVB Securities is not a proper party in this action. Drendel is without information or knowledge sufficient to form a belief as to the remaining allegations in paragraph 8.

9. Drendel admits the allegations in paragraph 9.

## JURISDICTION AND VENUE

10. Drendel admits the allegations in paragraph 10.

11. Drendel admits the allegations in paragraph 11.

## FACTS

12. Drendel admits that he was employed with SVB (or by Leerink Partners, as it was previously known) starting in March 2015 "as a health care investment banker on SVB's Specialty Pharmaceuticals team, finishing his tenure as a Senior Managing Director and the head of SVB's small Charlotte office." Drendel further states that upon his departure, Drendel was a "senior investment banker." Except as so admitted and stated, Drendel denies the allegations in paragraph 12.

13. Drendel admits that he "advised and represented domestic and international clients in mergers and acquisitions (M&A) transactions involving companies in the specialty and generic pharmaceutical sector." Except as so admitted, Drendel is without information or knowledge sufficient to form a belief as to the allegations in paragraph 13.

14. Drendel admits the allegations in paragraph 14.

15. Drendel states that he maintained a book of business and that potential clients "usually came to the Specialty Pharmaceuticals team looking to work with Drendel, Mr. Webster, or both." Drendel further states that he is aware that Raymond James had discussions with Byron Webster. Except as so stated, Drendel is without information or knowledge sufficient to form a belief as to the allegations in paragraph 15.

16. Drendel states that he played a role in obtaining clients. Except as so stated, Drendel denies the allegations in paragraph 16.

17. Drendel states that he played a role in maintaining client relationships. Except as so stated, Drendel denies the allegations in paragraph 17.

18. Drendel states that he played a role in building relationships with clients. Except as so stated, Drendel denies the allegations in paragraph 18.

19. Drendel states that he personally participated in a large number of transactions and earned significant compensation during his tenure at SVB. Except as so stated, Drendel is without information or knowledge sufficient to form a belief as to the allegations in paragraph 19.

***Drendel's 2014 Employment Agreement and 2018 Retention Agreement***[2]

20. Drendel admits that (1) he "signed an offer letter with Leerink Partners LLC, the name by which SVB Securities was previously known, on or about December 10, 2014;" (2) the 2014 Offer Letter attached as Exhibit 1 speaks for itself; and (3) he did not commence his employment with Leerink Partners LLC until March 2015. Except as so admitted, Drendel denies the allegations in paragraph 20.

21. Drendel admits that the 2014 Offer Letter attached as Exhibit 1 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 21.

22. Drendel admits that (1) he "entered a retention agreement with Plaintiff SVBFG and Leerink Holdings, LLC" and (2) the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 22 and is without information or knowledge sufficient to form a belief as to the allegation that "[i]n or about the fall of 2018, Plaintiff SVBFG entered negotiations to acquire the Leerink businesses."

23. Drendel admits that the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 23.

---

[2] Drendel denies all headings used through the Verified Complaint.

24. Drendel admits that (1) the 2018 Retention Agreement attached as Exhibit 2 speaks for itself and (2) when he resigned, "he had received three of the five scheduled annual payments of his retention bonus[.]" Except as so admitted, Drendel denies the allegations in paragraph 24.

25. Drendel admits that the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 25.

26. Drendel admits that the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 26.

27. Drendel admits that the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 27.

28. Drendel admits that the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 28.

29. Drendel admits that the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 29.

30. Drendel admits that the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 30.

31. Drendel is without information or knowledge sufficient to form a belief as to the closing of the acquisition of Plaintiff SVB Securities Holdings LLC and its subsidiary SVB Securities LLC. Drendel denies the remaining allegations in paragraph 31.

32. Drendel states that he was paid cash and received stock pursuant to the Retention Agreement. Except as so stated, Drendel denies the allegations in paragraph 32.

***Plaintiff Resigns and Begins Working for Direct Competitor Raymond James in Violation of the Non-Compete Provision*** [3]

33. Drendel admits that he was recruited by Raymond James. Drendel further states that he is aware that other health care investment bankers were also recruited by Raymond James. Except as so admitted and stated, Drendel is without information or knowledge sufficient to form a belief as to the allegations in paragraph 33.

34. Drendel admits that his "position with Raymond James is in Charlotte, North Carolina, just a short distance from his prior office location with SVB in Charlotte." Except as so admitted, Drendel denies the allegations in paragraph 34.

35. Drendel admits that (1) on May 16, 2022, he "sent an email to SVB Vice Chairman/Global Co-Head of Investment Banking Dan Dubin and SVB Managing Director/Business Manager of Investment Banking Christine Del Corsano" and (2) the May 16, 2022 email attached as Exhibit 3 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 35.

36. Drendel admits that he "did not submit his notice by certified mail." Except as so admitted, Drendel denies the allegations in paragraph 36.

37. Drendel admits that the May 17, 2022 letter to Drendel attached as Exhibit 4 and the May 17, 2022 letter to Raymond James attached as Exhibit 5 speak for themselves. Except as so admitted, Drendel denies the allegations in paragraph 37.

38. Drendel denies the allegations in paragraph 38.

39. Drendel admits that SVB "made six direct deposits into Drendel's bank account[.]" Except as so admitted, Drendel denies the allegations in paragraph 39.

---

[3] Drendel denies the allegations in this heading of the Verified Complaint.

40. Drendel admits that the August 15, 2022 letter to SVB attached as Exhibit 6 and the August 19, 2022 email from SVB attached as Exhibit 7 speak for themselves. Except as so admitted, Drendel denies the allegations in paragraph 40.

41. Drendel denies the allegations in paragraph 41.

42. Drendel admits that the FINRA BrokerCheck report attached as Exhibit 8 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 42.

43. Drendel admits that the August 17, 2022 press release attached as Exhibit 9 and available on Raymond James's website speaks for itself. Drendel further states, on information and belief, that Mr. Matz resigned from SVB on the same day as Drendel and that Mr. Barreto resigned from SVB sometime thereafter. Except as so admitted and stated, Drendel denies the allegations in paragraph 43.

44. Drendel admits that the August 17, 2022 press release attached as Exhibit 9 and available on Raymond James's website speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 44.

45. Drendel admits that the August 17, 2022 press release attached as Exhibit 9 and available on Raymond James's website speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 45.

46. Drendel admits that the copy of the Raymond James's website as of September 2, 2022 attached as Exhibit 10 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 46.

47. Drendel admits that the copy of Drendel's public LinkedIn profile as of August 31, 2022 attached as Exhibit 11 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 47.

48. Drendel is without information or knowledge sufficient to form a belief as to the allegation that "[a]ll of these potential clients remain active prospects as of late August 2022 and potentially could generate at least $20 million in fees for SVB." Drendel denies the remaining allegations in paragraph 48.

49. Drendel is without information or knowledge sufficient to form a belief as to the allegation that "multiple formal client engagements for transactions that have yet to be completed … could collectively generate at least $10 million in fees for SVB in the next 12 months." Drendel denies the remaining allegations in paragraph 49.

50. Drendel is without information or knowledge sufficient to form a belief as to the allegation that "[i]t is not publicly known that all or some of these active prospective clients on the buy-side are looking to acquire their potential targets, nor it is [sic] publicly known that one or more of these active prospective clients on the sell-side are looking to sell themselves or their assets." Drendel denies the remaining allegations in paragraph 50.

51. Drendel denies the allegations in paragraph 51.

**FIRST CLAIM**
**(Breach of Contract)**

55. Drendel incorporates its responses to paragraphs 1 through 51 of the Verified Complaint.[4]

56. Drendel admits that the 2018 Retention Agreement attached as Exhibit 2 speaks for itself. Except as so admitted, Drendel denies the allegations in paragraph 56.

57. Drendel denies the allegations in paragraph 57.

58. Drendel denies the allegations in paragraph 58.

---

[4] Plaintiffs' Verified Complaint skips from paragraph 51 to 55. Paragraph numbers 52-54 are omitted and are therefore not addressed herein.

59. Drendel denies the allegations in paragraph 59.

60. Drendel denies the allegations in paragraph 60.

Drendel denies every allegation not otherwise admitted, including those in the Wherefore clause and sub-clauses (1) through (3) following paragraph 60 in Plaintiffs' Verified Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Drendel denies that it is required to respond to the allegations in Plaintiffs' Verified Complaint to the extent that the allegations constitute legal conclusions.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs cannot prevail on their claims against Drendel because the Verified Complaint fails to state a claim upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, under the doctrines of accord, satisfaction, acquiescence, ratification, waiver, collateral estoppel, or some combination of those.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or estopped, in whole or in part, under the 2014 Offer Letter (as defined in Plaintiffs' Verified Complaint).

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or estopped, in whole or in part, under the 2018 Retention Agreement (as defined in Plaintiffs' Verified Complaint).

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or estopped because Plaintiffs accepted Drendel's notice of resignation effective May 16, 2022.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the Non-Compete Provision in the 2018 Retention Agreement (as defined in Plaintiffs' Verified Complaint) is unenforceable.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Drendel did not breach any legal or contractual duty or obligation owed to Plaintiffs under the 2014 Offer Letter (as defined in Plaintiffs' Verified Complaint).

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because Drendel did not breach any legal or contractual duty or obligation owed to Plaintiffs under the 2018 Retention Agreement (as defined in Plaintiffs' Verified Complaint).

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or estopped because Drendel has fully performed his contractual duties under the 2014 Offer Letter (as defined in Plaintiffs' Verified Complaint).

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or estopped because Drendel has fully performed his contractual duties under the 2018 Retention Agreement (as defined in Plaintiffs' Verified Complaint).

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the Thirteenth Amendment prevents Plaintiffs from forcing Drendel to remain employed after his resignation on May 16, 2022.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because they failed to make reasonable efforts to mitigate any damages.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs do not have standing to enforce the 2014 Offer Letter (as defined in Plaintiffs' Verified Complaint).

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs are not proper parties to this proceeding.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to join indispensable parties.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because they have suffered no damages as a result of the matters alleged in the Verified Complaint.

## NINETEENTH AFFIRMATIVE DEFENSE

Drendel reserves the right to assert additional affirmative defenses including those that become known in the course of this litigation.

## RELIEF REQUESTED

Drendel asks that: (i) the Court dismiss the Verified Complaint with prejudice and judgment be entered in its favor and (ii) the Court grant such other relief as it may deem just and equitable under the circumstances of this case.

Dated: October 17, 2022

Respectfully submitted,

MAYNARD, COOPER & GALE, P.C.


*/s/ Peter S. Fruin*
Joshua B. Baker (NC Bar No. 43390)
Peter S. Fruin (admitted *pro hac vice*)
1901 Sixth Avenue North
Suite 1700
Birmingham, Alabama 35203
T: (205) 254-1000
jbaker@maynardcooper.com
pfruin@maynardcooper.com

Margaret M. Siller (admitted *pro hac vice*)
1201 Villa Place
Suite 200
Nashville, Tennessee 37212
T: (629) 258-2253
msiller@maynardcooper.com

*Counsel for Defendant Michael Drendel*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2022, the following parties were served through the Court's electronic filing system:

Jared E. Gardner
Mark S. Pincus
Gardner Skelton PLLC
505 East Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 335-0350
Facsimile: (704) 390-7027
jared@gardnerskelton.com
mark@gardnerskelton.com

*Counsel for SVB Financial Group and*
*SVB Securities Holdings LLC*

*/s/ Peter S. Fruin*
Of Counsel